**IN RE A.Y.**

[225 N.C. App. 29 (2013)]

IN THE MATTER OF A.Y.

No. COA12-80

Filed 15 January 2013

**1. Constitutional Law—right to counsel—waiver—appointment of guardian ad litem in assistive capacity**

The trial court did not err in a child neglect case by allowing respondent mother to waive counsel and proceed pro se even though respondent contended the appointment of a guardian ad litem (GAL) precluded respondent from waiving counsel on her own behalf. Because the GAL was acting only in an assistive capacity, respondent had the ability to waive counsel, so long as that waiver was knowing and voluntary.

**2. Child Abuse, Dependency, and Neglect—cessation of reunification efforts—sufficiency of findings of fact**

The trial court did not err in a child neglect case by ceasing reunification efforts and granting guardianship of a minor child to her grandparents even though respondent mother contended there were insufficient findings of fact to support the decision. Given the trial court's binding findings of fact and the supported portion of finding of fact eight, it could not be concluded that the unsupported portions of finding of fact eight were material to the trial court's decision to cease reunification efforts.

**3. Child Abuse, Dependency, and Neglect—waiver of future review hearings—reversed**

The Court of Appeals reversed the portion of the trial court's order waiving future review hearings in a child neglect case and remanded for the trial court to reconsider whether future review hearings are needed and to make appropriate findings of fact to support its decision.

Appeal by respondent from order entered 13 October 2011 by Judge Melinda H. Crouch in New Hanover County District Court. Heard in the Court of Appeals 24 July 2012.

*Gail E. Carelli for petitioner-appellee.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender J. Lee Gilliam, for respondent-appellant.*

**IN RE A.Y.**

[225 N.C. App. 29 (2013)]

*N.C. Administrative Office of the Courts, by Appellate Counsel Pamela Newell, for guardian ad litem.*

GEER, Judge.

Respondent mother appeals from the trial court's order ceasing reunification efforts and granting guardianship of the minor child A.Y. ("Ava")[1] to the child's paternal grandparents. Respondent mother primarily argues that the trial court erred in allowing her to proceed pro se. She contends that because the court had appointed respondent mother a guardian ad litem ("GAL"), only the GAL, acting in a substitutive capacity, could waive counsel. Under this Court's recent decision on remand from the Supreme Court in *In re P.D.R., L.S.R., J.K.R.*, 224 N.C. App. 460, 737 S.E.2d 152 (2012), we hold that even though the trial court did not specify whether the GAL was to serve in a substitutive or assistive capacity, a review of the record indicates that the GAL was intended to be assistive only. We hold that the trial court conducted a sufficient inquiry to determine that her waiver was proper.

We affirm the trial court's order to the extent it ceased reunification efforts and granted guardianship of Ava to her grandparents. We reverse and remand, however, with respect to the order's waiver of further review hearings.

<u>Facts</u>

The New Hanover County Department of Social Services ("DSS") first became involved with respondent mother in January 2010 due to a 911 domestic violence call. Between January 2010 and May 2010, there were at least four 911 calls because of domestic violence. On 3 May 2010, an incident of domestic violence led to respondent mothers obtaining a Domestic Violence Protective Order against respondent father.

On 7 May 2010, DSS filed a juvenile petition alleging that then five-year-old Ava was a neglected juvenile due to her parents' failure to provide proper care and supervision and their exposing Ava to a risk of physical and emotional injury. DSS gained non-secure custody and placed Ava with her paternal grandparents on 12 May 2010.

The trial court appointed counsel for respondent mother on 19 May 2010 and appointed a GAL for respondent mother pursuant to

---

1. The pseudonym "Ava" is used throughout this opinion to protect the minor's privacy and for ease of reading.

IN RE A.Y.

[225 N.C. App. 29 (2013)]

N.C. Gen. Stat. § 7B-620(c) on 25 June 2010. During the adjudication hearing on 14 July 2010, respondent mother's court-appointed attorney sought to withdraw, and respondent mother requested to proceed pro se. Respondent mother's GAL agreed with the attorney's request to withdraw given a personality conflict between respondent mother and the attorney. However, both DSS and respondent mother's GAL objected to respondent mother's request to proceed pro se on the grounds that it would not be in respondent mother's best interest. The trial court denied the request, appointed a substitute attorney, and ordered respondent mother to undergo a psychological evaluation.

Respondent mother underwent the psychological evaluation on 4 August 2010. That evaluation indicated that respondent mother had "average to high average" intelligence and "scored very high on a measure of common sense, moral reasoning, and judgment." According to the psychologist, these findings "raise[d] the question of the need for a Guardian Ad Litem" because such "scores suggest that she has the cognitive abilities to understand situations and their consequences[.]" The evaluation also concluded that respondent mother was "somewhat dysfunctional and has made, and continues to make, poor decisions"; continues to use marijuana without any plans to quit; and although she "recogniz[es] how problematic [respondent father] is as a parent and his bad influence on her, she nevertheless continues to interact with him even after obtaining a restraining order." The psychologist concluded that "her poor decision making is not due to cognitive limitations, but rather it is due to characterological (personality) features."

By order entered 29 September 2010, the trial court adjudicated Ava neglected based on a stipulation of the parties. The dispositional hearing was held 25 October 2010, at which time respondent father was again residing with respondent mother. The court found that returning custody to either parent was premature due to allegations of neglect, substance abuse, and domestic violence. The court ordered, among other things, for respondent mother to "complete Empowerment Groups" and that the Domestic Violence Protective Order be dismissed so that the parents could undergo couples counseling.

At a permanency planning review hearing held on 10 March 2011, the trial court ordered DSS to continue reunification efforts and for each parent to continue therapy and parenting education classes. Respondent parents began couples counseling in May 2011, but during the second session two weeks later, respondent parents had a verbal

altercation that became so aggressive that the therapist considered calling 911.

On 2 June 2011, respondent mother's second attorney filed a motion to withdraw. On the same day, respondent mother signed a waiver of the right to assistance of counsel. At the start of the permanency planning review hearing on 8 August 2011, the trial court, after reviewing this Court's decision in *In re P.D.R., L.S.R., J.K.R.,* 212 N.C. App. 326, 713 S.E.2d 60 (2011), *rev'd and remanded,* 365 N.C. 533, 723 S.E.2d 335 (2012), questioned respondent mother and her GAL regarding respondent mother's decision to waive counsel and represent herself:

> THE COURT: Okay. [Respondent mother], you understand that this matter is on for a review hearing in the juvenile case that was filed alleging that your daughter was neglected? Do you understand that?

> [RESPONDENT MOTHER]: [*No audible response*].

> THE COURT: And you'll need to answer out loud because because we record these proceedings.

> [RESPONDENT MOTHER]: Yes.

> THE COURT: Okay. And do you understand that you have a right to represent yourself in this matter?

> [RESPONDENT MOTHER]: Yes.

> THE COURT: And that if you cannot afford an attorney, one can be appointed to represent you?

> [RESPONDENT MOTHER]: Yes.

> THE COURT: And that previously you had Beth Bryant [*phonetic*] represent you and had represented you as provisional counsel all the way through to the last court appearance that you had. Is that correct?

> [RESPONDENT MOTHER]: Yes.

> THE COURT: And you had requested to represent yourself at the last court appearance. Is that correct?

> [RESPONDENT MOTHER]: Yes.

IN RE A.Y.

[225 N.C. App. 29 (2013)]

THE COURT: And do you understand that, representing yourself, you have to understand the process, and the procedural aspects of the case, not just the factual aspects of the case?

[RESPONDENT MOTHER]: Yes.

THE COURT: And at some point early in this process, the Department of Social Services had requested and the Court had appointed a Guardian Ad Litem for you?

[RESPONDENT MOTHER]: Yes.

THE COURT: Which indicates to me that, in order to protect the record, that it was probably an error on my part to have allowed [Respondent Mother] to discharge Ms. Bryant based upon my re-reading of PDR because I needed not only to inquire as to whether or not her waiver of counsel was knowing and voluntary but also whether she had the competence to represent herself in this matter, bot [sic] only to show whether she was competent to waive counsel but also that she was competent to represent herself in this matter. And I don't think that the inquiry in the record went far enough, and given the fact that she was appointed a Guardian ad Litem would certainly create an issue with regards to her ability to make those decisions.

[RESPONDENT MOTHER]: If I could just say something?

THE COURT: Yes, ma'am.

[RESPONDENT MOTHER]: It's been too long already, and I don't think that I would trust my lawyer at this point. [*Inaudible*]. I've already had two. I spent all night staying up [*Inaudible*] getting ready for this day, and I want—I mean each time that we move it around I'm missing my daughter more and more. So I really don't want—I really want to go forward.

THE COURT: Well, [respondent mother], what I'm trying to do is to protect your legal rights, legal rights as to the access to your daughter, and regardless of whether or not you spent all night staying up preparing, the question is whether you're actually competent to do so.

IN RE A.Y.

[225 N.C. App. 29 (2013)]

**[Pause.]**

[RESPONDENT MOTHER]: I understand the procedure of it. I understand the case, and from my perspective, it doesn't look like they have too much on me [*Inaudible*]. I don't think anybody could do it better because they don't know what's going on like I do.

THE COURT: And have you had an opportunity to confer with your Guardian ad Litem?

[RESPONDENT MOTHER]: [*Inaudible*]. We didn't really get to talk very much. We spoke about it. We spoke about it before.

**[Pause.]**

THE COURT: Ms. Michael [respondent mother's GAL], do you have concerns as to [respondent mother]'s competence to represent herself?

MS. MICHAEL: As far as capacity, Your Honor, she's her own person. She does not have a Guardian other than the Guardian that the State's assigned her. So the Guardian d [sic] Litem throughout the case—she's a very intelligent young woman, very driven young woman.

I have told her multiple times I do not believe it is in her best interest to proceed without counsel as this involves her Constitutional rights as a parent and the future of her child and how much involvement she will have in her child's life. So I have advised her, as her Guardian ad Litem, not to proceed without counsel. I think that she understands the ramifications of today. She, albeit, is not an attorney or licensed, but she is very adamant about representing herself pro se and continuing with the matter.

I don't think that she's mentally handicapped from representing herself. I think, from a capacity standpoint, as far as—as far as an IQ score or determination, more mentally handicapped as far as her psychological evaluation or any mental limitation. I think she's needed assistance throughout

IN RE A.Y.

[225 N.C. App. 29 (2013)]

the process because of her [*Inaudible*] and communication trouble that she's had with various players in the case, and that's been my role, has been my posture.

THE COURT: Yeah, but communication with you—inform the Court what you mean by that.

MS. MICHAEL: I think that [respondent mother] can be confused as far as common sense versus the law. I think that, when she is told or heard something, she can react quicker than she should as far as her actions or words.

[RESPONDENT MOTHER]: I would like to show that I am just emotional in this situation, but they take a defensive or not, you know, wanting to cooperate. They don't take into account that they just said, "We're never going to send your daughter home," or, "I'll take your daughter away from you." Like, I just—there are certain things that, in my opinion, [*Inaudible*] that are just—you know, you don't say to another person. I mean that being said.

THE COURT: Well, [respondent mother], do you—

**[Pause.]**

THE COURT: Does the emotional nature of this proceeding impair your ability to act rationally?

[RESPONDENT MOTHER]: I've taken two—

THE COURT: Well, you need to answer my question first, rather than explain.

[RESPONDENT MOTHER]: Can you say it one more time?

THE COURT: Do you believe that the emotional nature of this proceeding may impair your ability to act-rationally?

[RESPONDENT MOTHER]: Absolutely, Your Honor. This is very, very important to me.

THE COURT: Can you tell me a little bit about your education background?

**IN RE A.Y.**

[225 N.C. App. 29 (2013)]

[RESPONDENT MOTHER]: Right now, I am going to [*Inaudible*] one year just have a basic Associate Degree, criminal justice major. I just signed up for paralegal classes. This is what I want to do. After this experience, I want to be a lawyer that helps people in my situation. So I would—this is very important to me, and I want to, you know, [*Inaudible*]. I have taken psychology, sociology, English.

[**Pause.**]

[RESPONDENT MOTHER]: [*Inaudible*].

[**Pause.**]

MS. MICHAEL: Just to respond—continue to respond to Your Honor's questions of the Guardian for [respondent mother], [*Inaudible*] found that she bears cognitive abilities in the average to high average range, and her IQ is above almost 80 percent of the population. Moreover, her cognitive abilities are relatively stable across [*Inaudible*], and she even shows a particular propensity for common sense and judgement. [*Inaudible*] cause of her difficulties appear to be more personality. That's more of what I've been doing in helping to assist.

[RESPONDENT MOTHER]: Also, that's personal opinion [*Inaudible*].

THE COURT: Anything further from you, [respondent mother]?

[RESPONDENT MOTHER]: I would just like to at least try, and I can show you. I have questions that are important, parts that I've realized [*Inaudible*] from the beginning, and my lawyer wouldn't speak up and say anything. That's all I have.

THE COURT: Thank you. Anything from you, Ms. Carelli or Mr. Highsmith?

MS. CARELLI: No.

[**Pause.**]

THE COURT: Okay. I'm going to allow you to proceed.

[RESPONDENT MOTHER]: Thank you.

The review hearing then commenced with respondent mother representing herself. In its written order entered 13 October 2011, the trial court ordered DSS to cease reunification efforts and granted guardianship of the juvenile to the paternal grandparents. The court also ordered that no further review hearings would be held absent a motion from one of the parties. Respondent mother timely appealed to this Court.

I

[1] In her first argument, respondent mother argues that the trial court erred when allowing her to waive counsel and proceed pro se because the appointment of a GAL precluded respondent mother from waiving counsel on her own behalf. Respondent mother argues that a parent's GAL appears as a substitute for the parent and not in merely an assistive capacity. According to respondent mother, any waiver of counsel must be by the GAL.

In an abuse, neglect, and dependency case, "the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right." N.C. Gen. Stat. § 7B-602(a) (2011). Further, a trial court "may appoint a guardian ad litem for a parent in accordance with G.S. 1A-1, Rule 17, if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest." N.C. Gen. Stat. § 7B-602(c).

This Court addressed the role of a parent's GAL in *In re P.D.R.* Although *In re P.D.R.* involved the appointment of a GAL for a termination of parental rights proceeding under N.C. Gen. Stat. § 7B-1101.1(c) (2011), its analysis applies equally to N.C. Gen. Stat. § 7B-602(c). Both statutes allow for the appointment of a GAL for a parent when the parent is either (1) incompetent, or (2) has diminished capacity and cannot adequately act in his or her own interests.

This Court held in *In re P.D.R.*:

> [W]e believe that the role of the GAL should be determined based on whether the trial court determines that the parent is incompetent or whether the trial court determines that the parent has diminished capacity and cannot adequately act in his or her own interest. Rule 17(e), which addresses the duties of a GAL for an incompetent person, should apply if the parent is incompetent—the role of the GAL should be one of substitution.

**IN RE A.Y.**

[225 N.C. App. 29 (2013)]

On the other hand, if the parent has diminished capacity, N.C. Gen. Stat. § 7B–1101.1(e) should apply and the role of the GAL should be one of assistance.

224 N.C. App. at 469, 737 S.E.2d at 158.

In deciding whether to appoint a parental GAL, the court "must conduct a hearing in accordance with the procedures required under Rule 17 in order to determine whether there is a reasonable basis for believing that a parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. If the court chooses to exercise its discretion to appoint a GAL under N.C. Gen. Stat. § 7B–1101.1(c), then the trial court must specify the prong under which it is proceeding, including findings of fact supporting its decision, and specify the role that the GAL should play, whether one of substitution or assistance." *Id.* at 470, 737 S.E.2d at 159, 2012.

Thus, whether a GAL appears in a substitutive capacity or an assistive capacity depends upon the basis for the appointment of the GAL. In this case, the trial court did not, of course, have the benefit of our decision in *In re P.D.R.*, so it did not specify whether it was acting under the incompetence prong or the diminished capacity prong. Nevertheless, the trial court specifically found in its Order on Review of the Permanent Plan that respondent mother "understands and appreciates the consequences of her decision to appear *pro se*, and comprehends the nature of the proceedings." The court further found that respondent mother "has demonstrated the mental fitness" to waive her right to counsel.

In addition, a review of the record indicates that the GAL was *not* appointed because of concerns about respondent mother's competency, but rather because personality issues impaired her ability to interact with others involved in the proceeding. The record shows, in addition, that the GAL and the trial court understood the GAL to be functioning in an assistive role because of the personality issues.

Based on the trial court's findings and the record, we see no reason to remand for any further proceedings on this issue. Because the GAL was acting only in an assistive capacity, respondent mother had the ability to waive counsel, so long as that waiver was knowing and voluntary.

With respect to her waiver, respondent mother contends that the trial court failed to conduct the proper inquiry into her decision to waive counsel because the court failed to address the third prong of N.C. Gen. Stat. § 15A-1242(3) (2011), which asks whether the defendant "[c]omprehends the nature of the charges and proceedings and the range of permissible punishments."

Respondent mother's argument, based on our first opinion in *In re P.D.R.*, was rejected by the Supreme Court, which held that N.C. Gen. Stat. § 15A-1242 is inapplicable outside of criminal cases. *In re P.D.R.*, 365 N.C. at 538, 723 S.E.2d at 338. The trial court must, however, still determine that the waiver of counsel is knowing and voluntary. *See, e.g.*, N.C. Gen. Stat. § 7B-1109(b) (2011) (providing in a termination of parental rights hearing, that "[i]n the event that the parents do not desire counsel and are present at the hearing, the court shall examine each parent and make findings of fact sufficient to show that the waivers were knowing and voluntary."). *See also In re H.D.F., H.C., A.E.*, 197 N.C. App. 480, 495, 677 S.E.2d 877, 886 (2009) (holding that respondent father adequately waived his right to counsel where waiver was made knowingly and voluntarily).

Here, we believe the trial court's inquiry was adequate to determine whether respondent mother knowingly and voluntarily waived her right to counsel. The trial court undertook a fairly lengthy dialogue with respondent mother to determine her awareness of her right to counsel and the consequences of waiving that right. Although respondent mother agreed that she was emotional due to the nature of the case, she demonstrated that she knew the nature of the proceedings as well as the factual aspects of the case. The trial court also questioned respondent mother's GAL, who indicated that she had discussed the issue of proceeding pro se with respondent mother and that, in the GAL's opinion, respondent mother was intelligent, she understood the ramifications of the hearing, and she had the capacity to make her own decisions. The GAL explained that respondent mother's difficulties were more to do with her personality and not her cognitive abilities.

Based on our review of the record, we cannot conclude that respondent mother's decision to waive counsel was involuntary or unknowing. Therefore, we conclude the trial court did not err in allowing respondent mother to waive counsel and proceed pro se.

IN RE A.Y.

[225 N.C. App. 29 (2013)]

II

[2] We now turn to respondent mother's substantive arguments regarding the trial court's order. First, respondent mother contends that the trial court made insufficient findings of fact to support its decision to cease reunification efforts.

Pursuant to the Juvenile Code, a trial court may direct the cessation of continued reunification efforts if the court makes findings of fact that the "efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" N.C. Gen. Stat. § 7B-507(b)(1) (2011). Here, the trial court determined:

> That the Court finds that pursuant to North Carolina General Statutes §7B-507, [DSS] is no longer required to make reasonable efforts in this matter to reunify this family as those efforts would clearly be futile and would be inconsistent with this child's health and safety, and need for a safe, permanent home within a reasonable amount of time. That due to the lack of progress of the parents in addressing the conditions that led to the removal of this child from their care, this child cannot be safely returned home now or in the next six months.

In support of this determination, the court made several findings of fact. Specifically, the court found that respondent mother "had made limited progress on all seven treatment goals" identified by respondent mother's therapist and had "not completed any of them." The court found that respondent parents attempted joint therapy on two occasions, but during the second occasion, they "engaged in a verbal confrontation that resulted in [the therapist] terminating the session and considering a call to 911 due to concerns that the altercation might become physically violent." The therapist "determined that she would be unable to provide joint counseling to the couple."

Additionally, the court found that Ava's therapist could not engage respondent parents in a dialogue about their daughter's needs "in large part due to the parents' inability to regulate their emotions long enough to participate in a meaningful discussion." Ava herself had "expressed considerable fear and anxiety with regard to being around her parents due to the ongoing conflict and domestic violence" between them. The court found, based on Ava's father's testimony, that "incidents of verbal altercations and conflict between [the parents] have been ongoing."

IN RE A.Y.

[225 N.C. App. 29 (2013)]

The court found that respondent mother had engaged in "a pattern of poor parenting." As part of that pattern, the court found that Ava "found a gun in [respondent mother's] car and proceeded to play with it, until [respondent mother] took it from her, removed the magazine, and handed it back to the child."

None of these findings of fact are challenged by respondent mother. Therefore, they are deemed to be supported by competent evidence and are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991); *see also In re S.N.H. & L.J.H.*, 177 N.C. App. 82, 83, 627 S.E.2d 510, 512 (2006).

Respondent mother, however, challenges the following finding of fact as unsupported by the evidence:

> 8. That the Court heard testimony from both the volunteer Guardian ad Litem Deanne Mihevc and Social Worker Georgia Morris regarding an incident with the Respondent-parents in June of this year. The Court finds as fact that in the presence of the Guardian ad Litem and the Social Worker, both parents engaged in a verbal altercation wherein accusations of infidelity, blame with regard to [Ava] remaining out of the home, and general verbal aggression was witnessed for more than one hour, and that both the Guardian and the Social Worker considered a call to 911 as the altercation appeared to border on becoming physically violent.

We agree that this finding of fact is only partially supported by competent evidence. The record indicates that Ms. Mihevc and Ms. Morris did witness verbal aggression between the parents, but that the incident occurred in May 2011 rather than June 2011. In addition, there is no evidence that either woman considered making a call to 911 during the confrontation.

This error is, however, harmless. Even with the unsupported portions of this finding omitted, the court's findings still establish that verbal aggression and significant conflict between the parents was continuing, including two significant episodes only three months before the hearing, and the parents had not successfully engaged in couples therapy. Respondent mother herself had made only limited progress on her treatment goals and had a pattern of poor parenting. Finally, the conflict and domestic violence continued to have a detrimental effect on Ava's physical and emotional well-being.

IN RE A.Y.

[225 N.C. App. 29 (2013)]

Given the trial court's binding findings of fact and the supported portion of finding of fact eight, we cannot conclude that the unsupported portions of finding of fact eight were material to the trial court's decision to cease reunification efforts. Consequently, we find no error in the trial court's decision to cease reunification efforts and award guardianship to the paternal grandparents.

## III

[3] Finally, respondent mother contends that the trial court erred when it ordered "[t]hat absent the filing of a Motion for Review by any party upon a substantial change of circumstances affecting the welfare and best interest of this juvenile, further reviews are waived." Respondent mother argues and DSS and the GAL concede that the trial court failed to make the findings of fact required by N.C. Gen. Stat. § 7B-906(b) (2011).

N.C. Gen. Stat. § 7B-906(b) provides:

> Notwithstanding other provisions of this Article, the court may waive the holding of review hearings required by subsection (a) . . . if the court finds by clear, cogent, and convincing evidence that:
>
> > (1) The juvenile has resided with a relative or has been in the custody of another suitable person for a period of at least one year;
> >
> > (2) The placement is stable and continuation of the placement is in the juvenile's best interests;
> >
> > (3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months;
> >
> > (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion; and
> >
> > (5) The court order has designated the relative or other suitable person as the juvenile's permanent caretaker or guardian of the person.

If a trial court fails to make findings of fact on these factors, the order

must be reversed and remanded for proper findings. *See In re R.A.H.,* 182 N.C. App. 52, 62, 641 S.E.2d 404, 410 (2007).

Here, the trial court's findings establish that Ava had been placed with her paternal grandparents since at least 10 March 2011, but did not specifically find that the placement had been for at least a year, as required for the first factor. The findings are sufficient with respect to the second and fifth factors, but none of the trial court's findings can be read as addressing the third and fourth factors. Consequently, we must reverse the portion of the order waiving future review hearings and remand for the trial court to reconsider whether future review hearings are needed and to make appropriate findings of fact to support its decision.

Affirmed in part; reversed and remanded in part.

Judges McGEE and McCULLOUGH concur.