IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-724

Filed: 1 September 2020

Mecklenburg County, Nos. 08JA713, 17JA264, 17JA265

IN THE MATTER OF:  J.M., D.M., and K.M.

Appeal by Respondent-Mother from orders entered 23 January 2019 by Judge Elizabeth Trosch in District Court, Mecklenburg County.  Heard in the Court of Appeals 26 May 2020.

*Senior Associate County Attorney Kristina A. Graham for Mecklenburg County Department of Social Services, Petitioner-Appellee.*

*William L. Gardo II for Guardian ad Litem.*

*Peter Wood for Respondent-Appellant.*

McGEE, Chief Judge.

Respondent-Mother ("Respondent") appeals from a permanency planning order and guardianship order granting guardianship of her children J.M., D.M., and K.M. to their maternal grandmother (the "grandmother") and awarding her visitation.  On appeal, Respondent argues the trial court erred in (1) treating her request for a new attorney as a waiver of counsel and (2) granting the grandmother discretion over Respondent's visitation with her children.  We remand the permanency planning order to the trial court for written findings of fact sufficient to demonstrate that Respondent's waiver of counsel was knowing and voluntary.  We also vacate and remand the part of the permanency planning order and the

guardianship order granting the grandmother discretion over Respondent's visitation with the children.

## I. Factual and Procedural History

Respondent has four children: J.M, D.M., K.M., and T.L.[1]  Father ("Father") is the biological father of J.M., D.M., and K.M. (the "children"), but not T.L.  The Mecklenburg County Department of Social Services, Youth and Family Services ("DSS") received a child protective services ("CPS") report concerning all four children on 6 February 2017.  Following an investigation, DSS filed a petition on 19 May 2017 alleging that J.M., D.M., K.M., and T.L. were neglected and dependent juveniles.

The petition alleged that at the time of the CPS investigation, both Respondent and Father were homeless and, as a result, Respondent had placed the children in the care of the grandmother.  Respondent picked the children up from the grandmother's home on 16 March 2017 and dropped them off the next day at DSS explaining, in front of the children, "that she didn't want them."  After the children were returned to the grandmother's home, Respondent contacted DSS and explained that she wanted to relinquish her rights to the children.  Respondent appeared at the grandmother's home on 18 May 2017—holding a box cutter—and demanded to see the children.  Charlotte Mecklenburg Police Officers arrived at the grandmother's house and drove K.M. and D.M. to school, but Respondent refused to let J.M. out of

---

[1]T.L. has turned 18 years old and is not part of this appeal.

her arms until DSS arrived at the house. Respondent expressed that she would rather the children be placed in foster care, even if they had to be split up, than remain in the grandmother's care.

After appointing Donna Jackson ("Ms. Jackson") as provisional counsel for Respondent, the trial court conducted an adjudication hearing on 22 August 2017. At the end of the hearing, after the trial court announced its finding in open court that the children were neglected and dependent juveniles, the following occurred:

> MS. JACKSON: Your Honor, I have not turned in an affidavit of indigency, but at this time, [Respondent] is wanting me to withdraw. So I don't know if you want to address that issue with her.
>
> THE COURT: Well, [Respondent], because your children have been adjudicated neglected and dependent, you do have the right to the assistance of a lawyer during these hearings. And if you are unable to afford to pay a lawyer, you have the right to a court-appointed lawyer. I think we went over this some time ago. So do you want the help of a lawyer during these proceedings?
>
> [RESPONDENT]: No, I don't.
>
> THE COURT: You want to represent yourself?
>
> [RESPONDENT]: Yes.
>
> THE COURT: You sure about that?
>
> [RESPONDENT]: Uh-huh (yes).
>
> MR. SMITH: Your Honor, the Department (inaudible) Ms. Jackson remain (inaudible).

THE COURT: Are you asking that Ms. Jackson withdrew [sic] and be removed from representing you?

[RESPONDENT]: Yes.

THE COURT: Okay. Well, just to ensure that your due process rights are protected, I mean I don't have any reason not to accept your waiver of your right to counsel, and I'll find that you waived your right to counsel. But at least for the next hearing, I'm going to ask Ms. Jackson to remain as standby counsel, for which role, Ms. Jackson, you can still submit an application. Okay? So that if there are legal issues that come up at the next hearing and you need a lawyer, you want some help just getting an explanation or understanding that, I just want her to be here to answer those questions in case they come up. Okay?

[RESPONDENT]: Uh-huh (yes).

THE COURT: Just to make sure that you have whatever help you may need at the next hearing. Okay? Okay. Then we're adjourned.

In the adjudication order entered 5 September 2017, the trial court made the following pertinent findings of fact: Respondent's mental health diagnoses have included bipolar disorder, schizophrenia, narcissistic personality disorder, and schizo-affective disorder. Between 2002 and August 2016, DSS received 21 CPS reports regarding Respondent's care of the children, including allegations that Respondent's mental illness impacted her ability to care for the children, domestic violence with Father, drug use in the home, and Respondent encouraging T.L. to kill herself. Regarding Respondent's counsel, the trial court found: Respondent "waived

her right to counsel at the end of the adjudication hearing and informed the Court that she will represent herself. [DSS] objected. [Respondent] may exercise her right to waive counsel; however the Court will appoint Ms. Jackson in a standby capacity." The trial court continued the children's custody with DSS and continued supervised visitation between Respondent and the children.

Ms. Jackson appeared as standby counsel for Respondent at the disposition hearing on 11 September 2017. In the disposition order entered 26 September 2017, the trial court established a primary plan of reunification with Respondent or Father with a secondary plan of adoption and continued supervised visitation between Respondent and the children. Ms. Jackson appeared as standby counsel at a review hearing on 13 November 2017.

The trial court held a permanency planning hearing on 27 June 2018. At the start of the hearing, the trial court told Respondent that Ms. Jackson was in a different hearing and asked Respondent what she wanted to do. Respondent expressed her desire to proceed with the hearing without Ms. Jackson. Following the hearing, the trial court entered an order expanding Respondent's visitation to two hours of unsupervised visitation per week.

Ms. Jackson filed a motion to withdraw as attorney of record for Respondent on 22 October 2018 because she "ha[d] become seriously ill and c[ould] not continue to represent" Respondent. The trial court granted Ms. Jackson's motion and

appointed Rhonda Hitchens[2] ("Ms. Hitchens") as Respondent's standby counsel. A permanency planning hearing and visitation hearing was scheduled on 4 December 2018. At the start of the hearing, Ms. Hitchens requested that the court continue the permanency planning hearing to a later date, but proceed with the visitation hearing. The following exchange ensued:

> THE COURT: So are you aware that [Respondent] is representing herself?
>
> MS. HITCHENS: Yes.
>
> THE COURT: And that you are standby counsel?
>
> MS. HITCHENS: Well, we had that conversation. I apologize, I should have started with that. So we had that conversation. She said that Ms. Jackson was her standby counsel.
>
> THE COURT: Hmm-hmm.
>
> MS. HITCHENS: She went through my bar information, and she was able to verify that I was really a lawyer. She came up here to verify that I was appointed to represent her. She verified all that information. And once we talked, she decided that she wanted me to represent her. She didn't want me as her standby counsel. But I guess the Court would have to have her here to say that.

The trial court spoke directly to Respondent:

---

[2] In the order appointing new counsel and the 20 December 2018 "visitation order and subsequent permanency planning hearing continuance order," Respondent's counsel is listed as "Rhonda Wilson." However, in the transcript and DSS reports, Respondent's counsel is listed as "Rhonda Hitchens."

THE COURT: All right. So, [Respondent], you recall several months ago we talked about the fact that you have the right to the help of a lawyer. Do you remember that?

[RESPONDENT]: Yes.

THE COURT: And that if you can not afford to hire a lawyer, you have the right to a court-appointed lawyer. Do you remember that?

[RESPONDENT]: Yes, ma'am.

THE COURT: Now, at that time, kind of at the beginning of this case, you said that you did not want a lawyer, that you wanted to represent yourself. Do you remember that?

[RESPONDENT]: I do.

THE COURT: And I ordered Ms. Jackson to remain as standby counsel.

[RESPONDENT]: Correct.

THE COURT: So are you -- have you changed your position as to whether you want the help of a lawyer?

[RESPONDENT]: Yes.

THE COURT: Okay. What is your position today? What do you want today?

 [RESPONDENT]: Oh, I want her to -- Ms. Hitchens, I'm sorry, to represent me.

THE COURT: So you do want the help of a lawyer today?

[RESPONDENT]: Yes.

THE COURT: And you're asking for a court appointed lawyer?

[RESPONDENT]: Yes.

THE COURT: Can you afford to hire a lawyer?

[RESPONDENT]: No.

The trial court found Respondent was indigent and appointed Ms. Hitchens as Respondent's counsel. The trial court then continued the permanency planning hearing until 8 January 2019 and proceeded to the hearing on visitation.

During the visitation hearing, a DSS social worker testified that Respondent's overnight visitation had been eliminated in mid-November 2018 after DSS "became concerned about [Respondent's] mental status because of the incidents that were occurring[;]" notably, Respondent sprayed pepper spray in her niece's face on 9 November 2018, remained parked outside the grandmother's home for 12 hours on 10 November 2018, and communicated threats to the grandmother at her home on 18 November 2018. The social worker explained that based on Respondent's behavior, DSS changed Respondent's visitation with the children from unsupervised to supervised.

Following the hearing, the trial court entered a "visitation order and subsequent permanency planning hearing continuance order" on 20 December 2018. In regard to Respondent's motion to continue the permanency planning hearing, the trial court found:

> 1. [Respondent] requested that the Court appoint Ms. Wilson as her attorney. Ms. Wilson was previously appointed as standby counsel as [Respondent] [chose] to represent herself at prior hearings.
>
> . . . .
>
> 3. The Court explained that the next hearing would not be continued if [Respondent] changed her mind about counsel and counsel's role at the next hearing. The permanency planning review hearing is continued in the interest of justice.

Regarding visitation, the trial court found that "visitation needs to be adjusted" for Respondent. Explaining that "[t]he [c]ourt is concerned about the respondent mother's recent behaviors of sitting outside her mother's home for most of a day and pepper spraying her [niece] during an argument[,]" the trial court found that "[t]here has been a deterioration" in Respondent's mental health that necessitated she "schedule an appointment with her therapist and medication management doctor." The trial court found Respondent's visitation with the children "needs to remain supervised until she demonstrates mental health stability."

The trial court conducted the permanency planning hearing on 8 January 2019. At the start of the hearing, the court addressed Respondent:

> THE COURT: All right. So, [Respondent], umm, Ms. Hitchens did inform me in the presence of the other attorneys that you are asking that she be released as your attorney. Is that correct?
>
> [RESPONDENT]: Yes.

- 9 -

THE COURT: So you understand that in these proceedings, you have the right to the help of a lawyer. Do you understand that?

[RESPONDENT]: I can't hear you.

THE COURT: Do you understand that in these kinds of cases, cases involving abuse and neglect, that you have the right to the help of a lawyer?

[RESPONDENT]: Yes.

THE COURT: And you understand that when you cannot afford to hire a lawyer, you have the right to a court-appointed lawyer?

[RESPONDENT]: Yes.

THE COURT: Okay. Now Ms. Hitchens had been appointed to represent you; is that correct?

[RESPONDENT]: Yes.

THE COURT: Do you want the help [of] a lawyer today?

[RESPONDENT]: Not Ms. Hitchens. Or just a lawyer, period?

THE COURT: Do you want the help of a lawyer?

[RESPONDENT]: I don't know.

THE COURT: Well, do you want Ms. Hitchens to continue to represent you or not?

[RESPONDENT]: No.

THE COURT: Okay. So are you asking that she be released as your court-appointed lawyer?

[RESPONDENT]: Yes.

THE COURT: Now, you understand that if I release her, you may not be able to have the help of a lawyer at all. She is the second lawyer that's been involved in your case, and this would be the second time that you've asked the Court to dismiss a lawyer. Do you understand that?

[RESPONDENT]: Hmm-hmm.

THE COURT: So is it your desire to proceed with the hearing today without the help of a lawyer?

[RESPONDENT]: Yes.

THE COURT: Okay. I'm going to ask Ms. Hitchens just to remain as standby counsel in case something comes up and you have a question and need her help. Okay? But at this point, we're going to proceed with you representing yourself, which you have done in other hearings. Okay?

[RESPONDENT]: Hmm-hmm

The hearing proceeded with Respondent representing herself and Ms. Hitchens serving as standby counsel. DSS and the guardian ad litem expressed their shared recommendation that the grandmother be named guardian and Father and Respondent have visitation; DSS presented the court with a proposed visitation agreement. Respondent questioned witnesses and expressed her disagreement with the grandmother being named guardian because Respondent had "been doing everything on [her] case plan that [she] need[ed] to."

The trial court announced its determination that "it is in the best interest of these children that they not remain in the custody of the Department, and that they

be placed in the guardianship of the maternal grandmother." Further, the trial court explained that the visitation plan proposed by DSS "is in the best interests of the children," but explained it would be making a "few modifications," including that "the grandmother shall have authority to modify conditions or duration of a visit of either parent if there[']s evidence that the demeanor or conduct of the parent could inflict emotional distress or cause harm to any one of the children." Finally, the trial court announced that Respondent or Father had the right to file a motion in the future if either parent wanted "different or more visitation or . . . fe[lt] like things have improved[.]" Respondent stated, "[t]hat's fine, I'm going to appeal."

On 23 January 2019, the trial court entered the "subsequent permanency planning hearing #1 order" (the "permanency planning order") and the guardianship order, granting the grandmother guardianship of the children. The permanency planning order and the guardianship order both noted that Respondent's attorney had been "released on [Respondent's] motion" and adopted DSS's proposed visitation agreement, with the following modifications:

> The parents shall not visit the juveniles together. [The grandmother] shall have authority to modify the conditions or duration of visits for either parent if there is evidence that the demeanor or conduct of either parent would cause emotional distress or harm to the children.

The comprehensive visitation agreement, adopted by the trial court, provided Respondent with four hours of unsupervised visitation and two hours of unsupervised "phone calls/facetime/skype" per week with the children.

Respondent appeals from the permanency planning order and the guardianship order.

## II. Analysis

### A. Waiver of Counsel

Respondent contends that the trial court erred at the 8 January 2019 hearing by treating her request for a new attorney as a waiver of counsel. As a result, Respondent asserts the trial court failed to conduct the appropriate statutory inquiry. We hold that the trial court correctly treated Respondent's request at the 8 January 2019 hearing as a waiver of counsel. However, we remand to the trial court to make written findings of fact sufficient to demonstrate that Respondent's waiver was knowing and voluntary.

N.C. Gen. Stat. § 7B-602 states that "[i]n cases where the juvenile petition alleges that a juvenile is abused, neglected, or dependent, the parent has the right to counsel and to appointed counsel in cases of indigency unless that person waives the right." N.C. Gen. Stat. § 7B-602(a) (2019). Furthermore, "[a] parent qualifying for appointed counsel may be permitted to proceed without the assistance of counsel only

after the court examines the parent and makes findings of fact sufficient to show that the waiver is knowing and voluntary." N.C. Gen. Stat. § 7B-602(a1).

Respondent cites *In re S.L.L.*,167 N.C. App. 362, 605 S.E.2d 498 (2004), in arguing that the trial court erred by equating her request for new counsel as a waiver of court-appointed counsel. In that case, following the release of his court-appointed counsel, the respondent-father stated, "I want counsel" on two occasions. *Id.* at 363, 605 S.E.2d at 499. The trial court explained to the respondent that, based on his decision to proceed without the help of two different court-appointed attorneys, he was "just going to have to represent [himself]" as the trial court was unable to "continue the case ad infinitum until [the respondent] f[ound] an attorney [he was] pleased with[.]" *Id.* On appeal, this Court noted that the respondent did not "expressly and voluntarily waive his right to counsel" but, instead, "repeatedly requested new counsel." *Id.* at 364, 605 S.E.2d at 499. As a result, this Court held that "the trial court erred by equating [the] respondent's request for new counsel with a waiver of court-appointed counsel, and requiring [the] respondent to proceed to trial pro se." *Id.* at 365, 605 S.E.2d at 500.

The present case is distinguishable from *S.L.L.* because Respondent *did not* ask for a new court-appointed attorney at the 8 January 2019 hearing. Although Respondent initially stated, "I don't know" when asked by the trial court if she wanted the help of an attorney, she ultimately clarified, after a series of follow-up questions,

that it was her desire to proceed with the hearing without the help of an attorney. Thus, we reject Respondent's assertion that the trial court incorrectly treated her request for new counsel as a request to waive her right to counsel.

Having established that Respondent did not request new counsel, we next determine whether Respondent's waiver of counsel was adequate under N.C. Gen. Stat. § 7B-602(a1); *i.e.* whether the waiver occurred "after the court examine[d] the parent and ma[de] findings of fact sufficient to show that the waiver [was] knowing and voluntary." N.C. Gen. Stat. § 7B-602(a1). This Court held that where a "trial court undertook a fairly lengthy dialogue with [a] respondent mother to determine her awareness of her right to counsel and the consequences of waiving that right[,]" "the trial court's inquiry was adequate to determine whether [the] respondent mother knowingly and voluntarily waived her right to counsel." *In re A.Y.*, 225 N.C. App. 29, 39, 737 S.E.2d 160, 166 (2013).

In the present case, the trial court informed Respondent of her right to counsel and her right to have appointed counsel, and then explained that if she chose to release to Ms. Hitchens—the second attorney appointed to represent her—the hearing would "proceed with [Respondent] representing [herself], which [she] ha[d] done in other hearings." Respondent confirmed that she understood her right to have appointed counsel and also understood that she "may not be able to have the help of a lawyer at all." The trial court inquired whether it was Respondent's request that

Ms. Hitchens be released as her court-appointed lawyer; Respondent replied, "yes." The trial court again asked Respondent if she wanted to proceed in that hearing *without the help of a lawyer* and Respondent replied, "yes." Thus, it appears that "the trial court's inquiry was adequate to determine whether [Respondent] knowingly and voluntarily waived her right to counsel." *In re A.Y.*, 225 N.C. App. at 39, 737 S.E.2d at 166.

However, the trial court failed to make "findings of fact sufficient to show that the waiver [was] knowing and voluntary." N.C. Gen. Stat. § 7B-602(a1). The permanency planning order does note that Respondent's attorney was "released on [Respondent's] motion[;]" however, the order is devoid of any findings regarding Respondent's waiver of counsel and decision to proceed *pro se*. As a result, we remand to the trial court for the entry of written findings of fact on whether Respondent's waiver of counsel was knowing and voluntary. Should the trial court determine that Respondent's waiver of counsel was not knowing or voluntary, Respondent shall be entitled to relief from the permanency planning order and a new permanency planning hearing shall be held. *Cf. In re S.N.W.*, 204 N.C. App. 556, 561, 698 S.E.2d 76, 79 (2010) (remanding to the trial court for findings of fact on an ineffective assistance of counsel claim).

## B. Visitation

Respondent also contends that the trial court impermissibly delegated a judicial function by granting the grandmother discretion over Respondent's visitation with the children. We must agree.

"This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion." *In re C.M.*, 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007) (citation omitted). Visitation in juvenile matters is controlled by N.C. Gen. Stat. § 7B-905.1, which provides, in pertinent part, as follows:

> (a) An order that removes custody of a juvenile from a parent, guardian, or custodian or that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation. The court may specify in the order conditions under which visitation may be suspended.
>
> (b) If the juvenile is placed or continued in the custody or placement responsibility of a county department of social services, the court may order the director to arrange, facilitate, and supervise a visitation plan expressly approved or ordered by the court. The plan shall indicate the minimum frequency and length of visits and whether the visits shall be supervised. Unless the court orders otherwise, the director shall have discretion to determine who will supervise visits when supervision is required, to determine the location of visits, and to change the day and time of visits in response to scheduling conflicts, illness of the child or party, or extraordinary circumstances. . . . If the director makes a good faith determination that the visitation plan is not consistent with the juvenile's health and safety, the director may temporarily suspend all or part of the visitation plan. . . .

(c) If the juvenile is placed or continued in the custody or guardianship of a relative or other suitable person, any order providing for visitation shall specify the minimum frequency and length of the visits and whether the visits shall be supervised. The court may authorize additional visitation as agreed upon by the respondent and custodian or guardian.

N.C. Gen. Stat. § 7B-905.1(a)-(c) (2019).

This Court has also explained that a trial court may not delegate its judicial function of awarding visitation to a juvenile's custodian:

> [the] judicial function [of awarding visitation] may [not] be . . . delegated by the court to the custodian of the child. Usually those who are involved in a controversy over the custody of a child have been unable to come to a satisfactory mutual agreement concerning custody and visitation rights. To give the custodian of the child authority to decide when, where[,] and under what circumstances a parent may visit his or her child . . . would be delegating a judicial function to the custodian.

*In re J.D.R.*, 239 N.C. App. 63, 75, 768 S.E.2d 172, 180 (2015) (quoting *In re Stancil*, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971)).

Respondent argues that the trial court's provision allowing the grandmother "to modify the conditions or duration of visits for either parent if there is evidence that the demeanor or conduct of either parent would cause emotional distress or harm to the children" is an improper grant of judicial authority. DSS asserts that the provision does not grant the grandmother discretion over Respondent's visitation because the grandmother is not authorized to terminate or suspend visitation; rather,

she is only allowed "to change the conditions and length of the visit upon the same good faith granted to DSS that the visit is not in the juveniles' best interest."

Under N.C. Gen. Stat. § 7B-905.1(b)—the subsection applicable to juveniles in DSS custody—DSS is authorized to "temporarily suspend all or part of the visitation plan" if "the director makes a good faith determination that the visitation plan is not consistent with the juvenile's health and safety." However, N.C. Gen. Stat. § 7B-905.1(c)—the subsection applicable to juveniles in the custody or guardianship of a relative—contains no similar statutory provision allowing for the temporary suspension of visitation based on a "good faith determination." Further, this Court has recognized a distinction, in the context of visitation, between a court's award of discretion to DSS and a court's award of discretion to a guardian. *See In re K.W.*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2020 WL 4091362, at *6 (July 21, 2020) (explaining that the cases relied upon by the respondent-mother "involve a grant of authority by the court to a guardian, not DSS, and are therefore distinguishable from this case").

In *In re C.S.L.B.*, 254 N.C. App. 395, 829 S.E.2d 492 (2017), this Court addressed the trial court's award of discretion over the respondent-mother's visitation to the guardian of the juveniles. There, the visitation order provided:

> Visits shall occur unsupervised for four hours a week upon leaving the Daybreak program provided [the r]espondent-mother tests negative and there is *no concern* she is using. She should not leave the children alone with anyone else

> during visitation, unless it is with a family member. Visits can become longer and more frequent with every six months of clean time outside the program. Visits should return to supervised or be suspended if [the r]espondent-mother tests positive for illegal substances, if there is *concern* she is using, or if there is *concern* for discord between [the r]espondent-mother and the children's father during visits.

*Id.* at 399–400, 829 S.E.2d at 495 (emphasis in original) (brackets omitted). Explaining that the visitation order "leaves [the r]espondent-mother's visitation to the discretion of the guardians based on their 'concerns[,]'" this Court vacated the order because it "improperly delegate[d] the court's judicial function to the guardians by allowing them to unilaterally modify [the r]espondent-mother's visitation." *Id.* at 400, 829 S.E.2d at 495 (citations omitted).

In the present case, as in *C.S.L.B.*, the trial court delegated the judicial function of determining Respondent's visitation plan to the children's guardian. *Id.* Although DSS is correct that the provision did not explicitly authorize the grandmother to terminate or suspend Respondent's visitation, the trial court did delegate to the grandmother the power "to unilaterally modify" Respondent's visitation. *Id.* at 400, 829 S.E.2d at 495 (citations omitted). As a result, we must vacate and remand this provision of the permanency planning order and guardianship order.

### III. Conclusion

For the reasons discussed above, we remand the permanency planning order to the trial court to make sufficient written findings of fact to demonstrate Respondent's waiver of court-appointed counsel was knowing and voluntary. Further we vacate and remand the provision in the permanency planning order and the guardianship order granting the grandmother discretion over Respondent's visitation with the children.

REMANDED IN PART; VACATED AND REMANDED IN PART.

Judges DIETZ and COLLINS concur.