DILLON, Judge.
 

 *576
 
 Jesus Martinez ("Defendant") appeals from judgments entered upon jury verdicts finding him guilty of eleven felonies based on sexual conduct he engaged in with a minor.
 

 I. Background
 

 The evidence at trial tended to show as follows: Defendant was cohabiting with his girlfriend ("Mother"),
 
 their
 
 infant child, and Mother's three children from a prior relationship.
 

 Mother testified that one morning, she walked into the bedroom she shared with Defendant and saw the sheets "moving up and down." She pulled back the sheets and saw her eight-year-old daughter, Chloe
 
 [1]
 
 , curled into a "little ball" and "hiding." Mother later asked Chloe what had been happening, and Chloe replied that Defendant had engaged in certain sexual conduct with her and had also done so in the past.
 

 At trial, Chloe testified in detail regarding incidents where Defendant had engaged in sexual acts with her.
 

 Defendant testified that when Mother walked into the bedroom, he and Chloe had simply been spending time together in bed, that both had been fully clothed, and that Mother had misinterpreted the situation.
 

 Mother informed law enforcement of the incident, and Defendant was subsequently arrested and indicted for numerous offenses. Defendant was convicted of eleven felonies: four counts of sex offense in a parental role, two counts of sex offense with a child, and five other felonies. Defendant timely appealed.
 

 *577
 
 II. Analysis
 

 Defendant makes four arguments on appeal: (1) that a medical expert witness impermissibly vouched for Chloe's credibility; (2) that a prospective juror made grossly prejudicial remarks during jury selection; (3) that the trial court's disjunctive instruction relating to the six "sexual offense" charges constituted plain error; and (4) that Defendant should have been allowed to introduce certain evidence to impeach the testimony of Chloe's mother. We address each argument in turn.
 

 A. Expert Testimony
 

 Defendant's first set of arguments relate to a statement made by Dr. Patricia Morgan which Defendant contends constituted improper vouching by an expert. During direct examination, Dr. Morgan made the following statement:
 

 PROSECUTOR: ... [W]ould you be able to confirm [from a medical exam] whether or not [Chloe] could have experienced vaginal bleeding a month or so prior?
 

 DR. MORGAN: It might be difficult to say because, again, that finding in and of itself I could see it in a girl who may not have experienced abuse. But
 

 in the fact that she did experience abuse
 

 , as well as have those findings of bleeding that she-
 

 [Defense Counsel interrupted Dr. Morgan's testimony with an objection, but then withdrew the objection immediately.]
 

 DR. MORGAN: Could you give me the question again, please? I want to make sure I'm answering it properly.
 

 PROSECUTOR: Yes, ma'am. I was just asking if in looking at the hymen, if you knew one way or the other if she previously experienced bleeding. Can you tell by looking at it?
 

 DR. MORGAN: If by looking at it I wouldn't be able to necessarily say if she had any bleeding because, again, the nature of the hymen is that it heals. And so I really couldn't say unless there was some
 
 *359
 
 residual or something that was evidence that shows that there was trauma.
 

 (emphasis added).
 

 *578
 
 On appeal, Defendant contends Dr. Morgan's statement emphasized above-that "in the fact that she did experience abuse"-constituted inadmissible expert opinion regarding Chloe's
 
 credibility
 
 . Defendant also contends that his counsel's failure to object constituted ineffective assistance of counsel.
 

 Our Supreme Court has held that in the absence of physical evidence to support a diagnosis of sexual abuse, expert testimony that sexual abuse has in fact occurred is not admissible because it is an impermissible opinion regarding the victim's credibility.
 
 State v. Stancil
 
 ,
 
 355 N.C. 266
 
 , 266-67,
 
 559 S.E.2d 788
 
 , 789 (2002).
 

 However, we conclude that Dr. Morgan's statement, considered in the context of her testimony as a whole, does not amount to an assertion that Chloe was in fact abused. Rather, a proper understanding of the transcript is that Dr. Morgan was speaking of a hypothetical victim when she made the statement. Indeed, Dr. Morgan testified that Chloe's medical exam was normal and that she could not determine from the exam whether or not Chloe had been sexually abused.
 

 Other cases from our Court in which plain error
 
 was
 
 found to be present involved much more conclusory statements made by the expert. For instance, in a case cited by Defendant, our Court found prejudicial error where an expert witness stated in response to a question: "My opinion was that she was sexually abused."
 
 State v. Dixon
 
 ,
 
 150 N.C.App. 46
 
 , 51,
 
 563 S.E.2d 594
 
 , 598 (2002) ;
 
 see also
 

 State v. Towe
 
 ,
 
 366 N.C. 56
 
 , 60,
 
 732 S.E.2d 564
 
 , 566 (2012) (finding plain error where expert stated that she would place the victim in the category of children who "have been sexually abused [and] have no abnormal findings");
 
 State v. Bush
 
 ,
 
 164 N.C.App. 254
 
 , 259,
 
 595 S.E.2d 715
 
 , 718 (2004) (finding plain error where expert stated: "My diagnosis was [that the child] was sexually abused by defendant");
 
 State v. Couser
 
 ,
 
 163 N.C.App. 727
 
 , 732,
 
 594 S.E.2d 420
 
 , 423-24 (2004) (finding plain error where expert testified that her diagnosis was "probable sexual abuse").
 

 Here, we do not believe that Dr. Morgan made an impermissible statement that she believed that Chloe was in fact abused. Accordingly, defense counsel's failure to object was not error, and therefore did not constitute ineffective assistance of counsel.
 

 B. Juror Remarks
 

 Defendant argues that a statement by one of the prospective jurors violated Defendant's constitutional right to an impartial jury and amounted to plain error. Specifically, Defendant contends that a
 
 *579
 
 prospective juror's statement that her uncle was a local defense attorney who had told her his job was to "get the bad guys off" amounted to a comment on
 
 Defendant's
 
 guilt from a reliable source. We disagree.
 

 The sole case cited by Defendant in support of this argument is
 
 State v. Gregory
 
 , in which a prospective juror stated that she helped prepare the defense for the defendant and had learned confidential information that would be favorable to the State if learned by the State.
 
 State v. Gregory
 
 ,
 
 342 N.C. 580
 
 , 587,
 
 467 S.E.2d 28
 
 , 33 (1996). Our Supreme Court concluded that these statements "[were] likely to cause the [other] jurors to form an opinion before they heard any evidence at trial, and [ ] a juror who has formed an opinion cannot be impartial."
 
 Id.
 
 at 587,
 
 467 S.E.2d at 33
 
 . Thus, the Court held that this statement denied the defendant a fair trial.
 

 In contrast, here, the statement by the prospective juror was generic and did not imply that she had any particular knowledge of
 
 Defendant's
 
 case or the possibility that
 
 Defendant
 
 might be guilty. We do not believe that the trial court's failure to take specific action addressing the juror's comment amounted to plain error.
 
 See
 

 State v. Black
 
 ,
 
 328 N.C. 191
 
 , 196,
 
 400 S.E.2d 398
 
 , 401 (1991) (stating that the trial court "has broad discretion to see that a competent, fair and impartial jury is impaneled") (internal marks omitted).
 

 C. Jury Instructions
 

 Defendant's third set of arguments relates to jury instructions given by the trial court regarding his six "sexual offense" convictions.
 

 *360
 
 It is this set of arguments that is the basis for the limited remand by our Supreme Court. In our first opinion, we agreed with Defendant that the trial court committed plain error when it gave a jury instruction where one of the theories upon which the jury could convict was not supported by any evidence offered at trial.
 

 Defendant was convicted of four felonies under
 
 N.C. Gen. Stat. § 14-27.4
 
 (a)(1) (first degree sexual offense with a child) and two felonies under
 
 N.C. Gen. Stat. § 14-27.7
 
 (a) (sex offense in a parental role). Both statutes require that a jury find that a defendant engaged in a "sexual act" with the victim.
 
 N.C. Gen. Stat. § 14-27.4
 
 (2013) ;
 
 N.C. Gen. Stat. § 14-27.7
 
 (2013). "Sexual act" is defined by the General Assembly as "cunnilingus, fellatio, analingus, or anal intercourse."
 
 N.C. Gen. Stat. § 14-27.1
 
 (4) (2013).
 

 At trial, the State's evidence tended to show that Defendant engaged in fellatio and anal intercourse with Chloe. The State did not present any
 
 *580
 
 evidence that Defendant engaged in analingus with Chloe. However, the trial court instructed the jury that it could find Defendant guilty of the six felonies if it found that he committed fellatio, anal intercourse,
 
 or analingus
 
 with Chloe.
 

 In our first opinion, we held, based on a line of cases from our Supreme Court, that the trial court's inclusion of "analingus," where there was no evidence of analingus offered at trial, essentially constituted plain error
 
 per se
 
 . In this line of cases, our Supreme Court consistently held that "[w]here the trial court erroneously submits the case to the jury on alternative theories, one of which is not supported by the evidence and the other which is, and [ ] it cannot be discerned from the record upon which theory or theories the jury relied in arriving at its verdict, the error entitles defendant to a new trial."
 
 State v. Lynch
 
 ,
 
 327 N.C. 210
 
 , 219,
 
 393 S.E.2d 811
 
 , 816 (1990) ;
 
 see also
 

 State v. Pakulski
 
 ,
 
 319 N.C. 562
 
 , 574,
 
 356 S.E.2d 319
 
 , 326 (1987) ;
 
 State v. Belton
 
 ,
 
 318 N.C. 141
 
 , 162-63,
 
 347 S.E.2d 755
 
 , 768-69 (1986),
 
 partially overruled on other grounds by
 

 State v. Gaines
 
 ,
 
 345 N.C. 647
 
 ,
 
 483 S.E.2d 396
 
 (1997).
 
 [2]
 
 Our Supreme Court has explained that a new trial is required in this case because "we
 
 must assume
 
 the jury based its verdict on the theory for which it received an improper instruction."
 
 State v. Petersilie
 
 ,
 
 334 N.C. 169
 
 , 193,
 
 432 S.E.2d 832
 
 , 846 (1993) (emphasis added). And our Supreme Court has stated that such error rises to the level of plain error: "it would be difficult to say that permitting a jury to convict a defendant on a theory not legally available to the State because it is not charged in the indictment or not supported by the evidence is not plain error even under the stringent test required to invoke that doctrine."
 
 State v. Tucker
 
 ,
 
 317 N.C. 532
 
 , 540,
 
 346 S.E.2d 417
 
 , 422 (1986) ;
 
 see also
 

 State v. Brown
 
 ,
 
 312 N.C. 237
 
 , 249,
 
 321 S.E.2d 856
 
 , 861 (1984).
 

 In the present case, it cannot be discerned from the verdict sheets which theory the jury relied upon to find that Defendant had engaged in sexual acts with Chloe. It could certainly be argued that the trial court's disjunctive instruction allowing the jury to convict based on a finding that Defendant engaged in analingus should not be considered plain error
 
 per se
 
 where there is clear evidence supporting the other theories contained in the instruction. The line of Supreme Court cases
 
 *581
 
 cited above, though, compels a plain error determination since we "must assume" that the jury based its verdict on the theory not supported by the evidence. And "[i]t is plain error to allow a jury to convict a defendant upon a theory not supported by the evidence."
 
 State v. Jordan
 
 ,
 
 186 N.C.App. 576
 
 , 584,
 
 651 S.E.2d 917
 
 , 922 (2007).
 
 See also
 

 State v. Crabtree
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 709
 
 , 717 (2016).
 

 In our first opinion, we essentially concluded that the trial court's disjunctive instruction constituted plain error
 
 per se
 
 , based on the line of Supreme Court cases which includes
 
 *361
 

 Petersilie
 
 ,
 
 Lynch
 
 ,
 
 Pakulski
 
 , and
 
 Belton
 
 . In our prior opinion, we assumed that the jury based its verdicts on its finding that Defendant committed analingus with Chloe. Thus, based on this presumption, we concluded that plain error occurred when Defendant was convicted based on a finding by the jury not supported by the evidence.
 

 Our Supreme Court, however, has remanded, instructing us to revisit our holding in light of its 2013 holding in
 
 State v. Boyd
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013), a case not cited by the State in its brief nor considered by our Court in our first opinion. In
 
 Boyd
 
 , our Supreme Court issued a two-line
 
 per curiam
 
 opinion adopting Judge Stroud's dissenting opinion from our Court. We now turn to analyze the trial court's disjunctive instruction in the present case in light of the
 
 Boyd
 
 decision.
 

 In
 
 Boyd
 
 , the trial court instructed the jury that it could convict the defendant of kidnapping on three alternative theories-that the defendant either confined, restrained, or removed the victim.
 
 State v. Boyd
 
 ,
 
 222 N.C.App. 160
 
 , 163,
 
 730 S.E.2d 193
 
 , 196 (2013). On appeal to our Court, two members of the panel held that the instruction constituted plain error, as there was no evidence that the defendant "removed" the victim.
 

 Id.
 

 In her dissent, Judge Stroud agreed with the majority that the trial court erred when it instructed on the theory of "removal," but that she disagreed that the error rose to the level of
 
 plain
 
 error.
 
 Id.
 
 at 167,
 
 730 S.E.2d at 198
 
 ("I believe that the instructional error as to 'removal' does not rise to the level of plain error."). In reaching her conclusion, Judge Stroud did not assume that the jury relied on the theory of removal to support the kidnapping conviction. Rather, Judge Stroud cited the overwhelming evidence supporting the
 
 other
 
 kidnapping theories-confinement and restraint-to conclude that the defendant failed to show "that, absent the error [instructing on removal], the jury would have returned a different verdict."
 
 Id.
 
 at 173,
 
 730 S.E.2d at 201
 
 . Judge Stroud cited extensively to
 
 *582
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 ,
 
 723 S.E.2d 326
 
 (2012), in which our Supreme Court clarified the application of the plain error test by reviewing courts.
 
 [3]
 

 The 2013
 
 Boyd
 
 decision represents a shift away from the
 
 per se
 
 rule that had been applied for a number of decades by our Supreme Court in cases involving disjunctive instructions where one of the theories was not supported by the evidence. Citing
 
 Lawrence
 
 , Judge Stroud did not follow the direction from our Supreme Court in past cases that a reviewing court "must assume" that the jury relied on the improper theory.
 
 See
 

 Petersilie
 
 ,
 
 334 N.C. at 193
 
 ,
 
 432 S.E.2d at 846
 
 . Rather, under
 
 Boyd
 
 , a reviewing court is to determine whether a disjunctive jury instruction constituted reversible error, without being required in every case to assume that the jury relied on the inappropriate theory.
 
 [4]
 

 We have reviewed the record and conclude that Defendant has failed to meet his burden of showing that the trial court's inclusion of "analingus" in the jury instruction had any
 
 probable
 
 impact on the jury's verdict. Chloe was clear in her testimony regarding the occasions where fellatio and anal intercourse had occurred. The case essentially came down to whether the jury believed Chloe's account or Defendant's account. The trial court's inclusion of the word
 
 *362
 
 "analingus" (for which there was no evidence) probably had no impact in the jury's deliberations. Therefore, we find no plain error in Defendant's convictions for sex offense with a child and sex offense in a parental role.
 
 [5]
 

 *583
 

 *584
 
 D. Impeachment Evidence
 

 Finally, Defendant argues that the trial court committed reversible error when it excluded relevant evidence which tended to show Mother's bias against him. On cross-examination, the trial court sustained the State's objections to defense counsel's attempt to elicit testimony from Mother on four different subjects; namely, that Mother (1) had recently discovered Defendant had another girlfriend, (2) was attempting to obtain a "U-visa"
 
 [6]
 
 to allow her to remain in the United States legally after the trial, (3) was upset that Defendant refused to lend her money, and (4) had previously accused Defendant of domestic violence. On appeal, Defendant contends that the trial court's exclusion of this impeachment evidence constitutes prejudicial error. We conclude that Defendant failed to preserve his challenge as to the first three forms of impeachment evidence; further, we conclude that the exclusion of the fourth form did not constitute prejudicial error.
 

 In order to preserve this issue for appellate review, "the significance of the excluded evidence must be made to appear in the record[.] [A] specific offer of proof is required unless the significance of the evidence is obvious from the record."
 
 State v. Simpson
 
 ,
 
 314 N.C. 359
 
 , 370,
 
 334 S.E.2d 53
 
 , 60 (1985). "[T]he essential content or substance of the witness's testimony must be shown before [the reviewing court] can ascertain whether prejudicial error occurred."
 

 Id.
 

 ;
 
 see also
 

 State v. Willis
 
 ,
 
 285 N.C. 195
 
 , 200,
 
 204 S.E.2d 33
 
 , 36 (1974) ("The words of the witness ... should go in the record.").
 

 In this case, the trial court did not hear Mother's responses to Defendant's first three lines of questioning. Defendant contends that statements he made during his testimony and at his sentencing hearing were an "offer of proof;" however, Defendant's speculation as to what the content of Mother's testimony would have been is not sufficient to show the
 
 actual
 
 "content or substance of [Mother's] testimony[.]"
 
 Simpson
 
 ,
 
 314 N.C. at 370
 
 ,
 
 334 S.E.2d at 60
 
 . Without her testimony in the record, it is impossible for this Court to determine whether Defendant's arguments have merit. As in
 
 Simpson
 
 , "[w]e fail to discern any reason why defense counsel could not have made an offer of proof by having the [witness] called to the stand in the absence of the jury and questioned about [her responses]...."
 
 Simpson
 
 ,
 
 314 N.C. at 371
 
 ,
 
 334 S.E.2d at 61
 
 . Accordingly, Defendant has failed to preserve these issues for our review.
 

 On the fourth line of questioning, however, the State concedes that Defendant did make an offer of proof that Mother had previously accused Defendant of domestic violence. "Although we review a trial court's ruling on the relevance of evidence
 
 de novo
 
 , we give a trial court's relevancy rulings great deference on appeal."
 
 State v. Capers
 
 ,
 
 208 N.C.App. 605
 
 , 615,
 
 704 S.E.2d 39
 
 , 45 (2010) (internal marks omitted).
 

 The record shows that during a bench conference, Defendant's counsel indicated that Mother had accused Defendant of domestic violence, that the police declined to prosecute him, that she subsequently took out a private warrant against Defendant, and that she failed to appear in court to prosecute
 
 *363
 
 that warrant. We agree with Defendant that exclusion of this evidence was error. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013). Evidence that Mother had accused Defendant of domestic violence could have indicated Mother's bias against Defendant and may have influenced the jury's assessment of her credibility as a witness.
 

 However, considering the entire record of Defendant's trial, we do not believe that there is a reasonable possibility that, had the jury heard evidence regarding Mother's accusation of past domestic violence by Defendant, a different result would have been reached at trial. N.C. Gen. Stat. § 15A-1443(a) ;
 
 see
 

 State v. Turner
 
 ,
 
 268 N.C. 225
 
 , 232,
 
 150 S.E.2d 406
 
 , 411 (1966). Mother offered eyewitness testimony concerning one of the acts of sexual conduct, and Defendant did not contradict her testimony that she saw
 
 something
 
 . Specifically, she stated that, on a single occasion, she discovered Defendant in bed with Chloe and that the covers were "moving up and down." Defendant did not contradict Mother's testimony, but instead offered an innocent explanation of the incident. The remainder of Mother's testimony involved what Chloe had told her about other acts of sexual conduct by Defendant. However, Chloe herself testified at trial regarding the acts of Defendant. And the jury was allowed to view a recording of a prior interview with Chloe and compare it with her testimony at trial. Further, Chloe's brother testified that on several occasions while the children were home alone with Defendant, Defendant would take the infant child and Chloe into the bedroom and lock the door.
 

 In light of the other evidence presented at trial which tended to establish Defendant's guilt, we are unable to conclude that Defendant was prejudiced by the exclusion of the evidence regarding Mother's prior accusation of domestic violence.
 

 *585
 
 III. Conclusion
 

 We find no reversible error in Defendant's convictions.
 
 [7]
 

 NO REVERSIBLE ERROR.
 

 Judge BERGER concurs.
 

 Judge BRYANT concurs in the result only, by separate opinion.
 

 BRYANT, Judge, concurring in the result only by separate opinion.
 

 Because I believe the majority overstates the holding of
 
 State v. Petersilie
 
 ,
 
 334 N.C. 169
 
 ,
 
 432 S.E.2d 832
 
 (1993), and because I disagree with the majority's characterization of the dissent adopted by the N.C. Supreme Court in
 
 State v. Boyd
 
 ,
 
 222 N.C.App. 160
 
 ,
 
 730 S.E.2d 193
 
 (2012),
 
 rev'd for the reasons stated in the dissenting opinion
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 (2013) (per curiam), as "a shift away from the
 
 per se
 
 rule ... in cases involving disjunctive [jury] instructions," I write separately and concur in the result only.
 

 The majority opinion states that a "line of Supreme Court cases
 
 [
 

 8
 

 ]
 
 compels a plain error determination since we 'must assume' that the jury based its verdict on the theory not supported by the evidence." The majority then proceeds to rationalize the disconnect between what it considers a directive in
 
 Petersilie
 
 ,
 
 see
 

 334 N.C. at 193
 
 ,
 
 432 S.E.2d at 846
 
 , and our Supreme Court's per curiam opinion in
 
 Boyd
 
 , by deciding that "Judge Stroud did not follow the instruction from our Supreme Court in past cases that a reviewing court 'must assume' that the jury relied on the improper theory." It is the majority's conclusion that there was a directive from the Supreme Court in
 
 Petersilie
 
 and the majority's overreliance on the words
 
 *364
 
 "we must assume" that compels me to write separately.
 

 In
 
 Petersilie
 
 , the "[d]efendant was convicted of eleven counts of publishing unsigned materials about a candidate for public office-all misdemeanors in violation of N.C.G.S. § 163-274(7)."
 
 334 N.C. at 172
 
 ,
 
 432 S.E.2d at 834
 
 . On appeal, the defendant argued,
 
 inter alia
 
 , that "the trial
 
 *586
 
 court committed reversible error by incorrectly defining the essential elements of the statute [ N.C.G.S. § 163-274(7) ] in its instructions to the jury."
 
 Id.
 
 at 191,
 
 432 S.E.2d at 845
 
 . Specifically, the defendant argued "the trial court erroneously included a scienter requirement while no such requirement is present in the statute."
 

 Id.
 

 Our Supreme Court agreed, holding "that the trial court committed reversible error by
 
 incorrectly stating the law
 
 in its jury instructions[,]"
 
 id.
 
 at 172,
 
 432 S.E.2d at 834
 
 (emphasis added), and granting the defendant a new trial because the erroneous instruction was "
 
 to defendant's prejudice
 
 ...,"
 
 id.
 
 at 192,
 
 432 S.E.2d at 845
 
 (emphasis added). In other words, the trial court incorrectly stated the law by adding to its jury instruction an intent requirement not present in the statute, and which the jury was required to find beyond a reasonable doubt for each of the eleven counts charged.
 
 Id.
 
 at 191,
 
 432 S.E.2d at 845
 
 (" Section 163-274(7) requires that the jury find beyond a reasonable doubt that [the] defendant published 'a charge derogatory to a candidate or calculated to affect the candidate's chances of nomination or election.' For all eleven counts against [the] defendant the trial court instructed the jury that it must find beyond a reasonable doubt that [the] defendant published: a charge
 
 he intended
 
 to be derogatory to a candidate for election ... or which he calculated would affect such candidate's chances of election....").
 

 In finding that the trial court incorrectly stated the law to the defendant's prejudice, the Supreme Court in
 
 Petersilie
 
 reasoned as follows:
 

 "When [the trial court] undertakes to define the law, [it] must state it correctly."
 
 State v. Earnhardt
 
 ,
 
 307 N.C. 62
 
 , 70,
 
 296 S.E.2d 649
 
 , 654 (1982). Failure to do so
 
 may be
 
 prejudicial error sufficient to warrant a new trial.
 

 Id.
 

 ....
 

 ... [W]e believe the incorrect instruction was "too prejudicial to be hidden by the familiar rule that the charge
 
 must be considered contextually as a whole
 
 ."
 

 Id.
 

 ...
 

 ....
 

 Because the trial court incorrectly instructed the jury regarding one of two possible theories upon which [the] defendant could be convicted and it is unclear upon which theory or theories the jury relied in arriving at its verdict, we must assume the jury based its verdict on the theory for which it received an improper instruction.
 

 Id.
 
 at 192-93,
 
 432 S.E.2d at 845-46
 
 (emphasis added) (citations omitted).
 

 *587
 
 Notably, the defendant in
 
 Petersilie
 
 objected at trial to the jury instruction as given, and thus, the standard of review on appeal was not the plain error standard, which is applicable in the instant case as it also was in
 
 Boyd
 
 .
 
 See
 

 222 N.C.App. at 168
 
 ,
 
 730 S.E.2d at 198
 
 (Stroud, J., dissenting) ("Because defendant did not object at trial, we review for plain error." (citation omitted)). Although not explicitly enunciated in
 
 Petersilie
 
 , the standard of review for jury instructions where the defendant objected at trial is a question of law reviewed
 
 de novo
 
 ,
 
 State v. Barron
 
 ,
 
 202 N.C.App. 686
 
 , 694,
 
 690 S.E.2d 22
 
 , 29 (2010) (citation omitted), with the caveat that "an error in jury instruction is
 
 prejudicial
 
 and requires a new trial only if 'there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial....' "
 
 State v. Castaneda
 
 ,
 
 196 N.C.App. 109
 
 , 116,
 
 674 S.E.2d 707
 
 , 712 (2009) (emphasis added) (citation omitted) (quoting N.C. Gen. Stat. § 15A-1443(a) );
 
 see
 

 Petersilie
 
 ,
 
 334 N.C. at 192
 
 ,
 
 432 S.E.2d at 845
 
 ("Failure to [instruct correctly on the law]
 
 may be
 
 prejudicial error sufficient to warrant a new trial." (emphasis added) (citation omitted)). Therefore, there is not-nor has there ever been-a
 
 per se
 
 rule involving disjunctive jury instructions. Recently, our Supreme Court in
 
 State v. Walters
 
 ,
 
 368 N.C. 749
 
 ,
 
 782 S.E.2d 505
 
 (2016), noted that "our case law has long embraced a distinction between unconstitutionally vague
 
 *365
 
 instructions that render unclear the offense for which the defendant is being convicted and instructions which instead permissibly state that more than one specific act can establish an element of a criminal offense."
 
 Id.
 
 at 753,
 
 782 S.E.2d at
 
 507 (citing
 
 State v. Bell
 
 ,
 
 359 N.C. 1
 
 , 29-30,
 
 603 S.E.2d 93
 
 , 112-13 (2004) );
 
 see also
 

 infra
 
 note 2.
 

 While the discussion in
 
 Walters
 
 ultimately addressed unanimity of jury verdicts, contrary to the majority's assertion in footnote 2, such discussion is helpful to the instant case.
 
 See
 
 Maj. Op. at 360 n.2 (citing
 
 Walters
 
 ,
 
 368 N.C. at 753-54
 
 ,
 
 782 S.E.2d at
 
 507-08 ) (stating that cases that deal with the issue of jury unanimity are "distinct from" and constitute a "separate line of Supreme Court cases" than those that address the issue of disjunctive jury instructions). However, the two lines of cases set forth and described in
 
 Walters
 
 -and which "cases have developed regarding the use of disjunctive jury instructions"-actually inform our analysis here.
 
 See
 

 368 N.C. at 753
 
 ,
 
 782 S.E.2d at 507
 
 (quoting
 
 Bell
 
 ,
 
 359 N.C. at 29
 
 ,
 
 603 S.E.2d at
 
 112 ).
 

 The first line of cases concerns jury instructions, like those in
 
 Petersilie
 
 , where the Court found the trial court's incorrect statement on the law in its jury instruction to be so prejudicial as to entitle the defendant to a new trial.
 
 See
 

 334 N.C. at 193, 196
 
 ,
 
 432 S.E.2d at 846, 848
 
 . The
 
 *588
 
 second line of cases concern jury instructions like we have in the instant case-where the trial court's instructions on "one or more specific acts, any of which could establish an essential element of the offense" were listed, but were not supported by the evidence.
 
 See
 

 State v. Hartness
 
 ,
 
 326 N.C. 561
 
 , 567,
 
 391 S.E.2d 177
 
 , 180-81 (1990) (noting that "the crime of indecent liberties is a single offense which may be proved by evidence of the commission of any one of a number of acts" and holding that "[t]he jury found [the] defendant guilty of committing indecent liberties upon his stepson after the trial judge correctly instructed it that it could find the immoral, improper, or indecent liberty upon a finding that [the] defendant either improperly touched the boy or induced the boy to touch him").
 
 [9]
 
 "In this type of case, the focus is on the intent or purpose of the defendant instead of his conduct."
 
 Walters
 
 ,
 
 368 N.C. at 753
 
 ,
 
 782 S.E.2d at 508
 
 (quoting
 
 Bell
 
 ,
 
 359 N.C. at 29-30
 
 ,
 
 603 S.E.2d at
 
 112-13 ).
 

 Under the plain error standard, under which this Court has been explicitly directed to review this issue by the Supreme Court,
 
 see
 

 Boyd
 
 ,
 
 366 N.C. 548
 
 ,
 
 742 S.E.2d 798
 
 , "[t]o establish plain error, defendant must show that the erroneous jury instruction was a fundamental error-that the error had a
 
 probable impact
 
 on the jury verdict."
 
 Boyd
 
 ,
 
 222 N.C.App. at 167
 
 ,
 
 730 S.E.2d at 198-99
 
 (Stroud, J., dissenting) (emphasis added).
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish
 
 prejudice
 
 that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 Id.
 
 at 168,
 
 730 S.E.2d at 198
 
 (emphasis added) (citations omitted) (quoting
 
 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) ).
 

 In
 
 Boyd
 
 , which involved a jury instruction on kidnapping, the trial court erroneously included in its instruction a reference to "removal" as a (disjunctive) theory of the kidnapping charge.
 

 *589
 

 Id.
 
 at 169,
 
 730 S.E.2d at 199
 
 . Because there was "overwhelming" evidence against the defendant, much of which "was uncontroverted,"
 
 see
 

 id.
 
 at 170,
 
 730 S.E.2d at 199
 
 , the dissent, with whom the Supreme Court agreed, reasoned as follows: "The omission of approximately ten words relating to 'removal' from the above jury instructions would, under the facts of this particular case,
 
 *366
 
 make no difference in the result. Therefore, I would find no plain error as to the trial court's instructions as to second-degree kidnapping."
 
 Id.
 
 at 173,
 
 730 S.E.2d at 201
 
 .
 

 In the instant case, the jury instructions the trial court gave relating to the six charges of "sexual offense with a child" read "contextually as a whole,"
 
 see
 

 Petersilie
 
 ,
 
 334 N.C. at 192
 
 ,
 
 432 S.E.2d at 846
 
 (citation omitted), as follows:
 

 The defendant has been charged with two counts of sexual offense with a child. For you to find the defendant guilty of both of these counts on this offense, the State must prove three things beyond a reasonable doubt.
 

 First, that the defendant engaged in a sexual act with the alleged victim. A sexual act means fellatio, which is any touching by the lips or tongue of one person and the male sex organ of another; or analingus, which is any touching by the lips or tongue of one person and the anus of another; or anal intercourse, which is any penetration, however slight, of the anus of any person by the male sexual organ of another.
 
 [10]
 

 The trial court erroneously included in its instruction the description of analingus where the State presented no evidence of analingus at trial. However, there was overwhelming evidence in the instant case that other sex offenses-fellatio and anal intercourse-had occurred.
 
 [11]
 
 Furthermore, as the standard of review in the instant case is plain error,
 
 Petersilie
 
 does not, in fact, require that "we must assume the jury based its verdict on the theory for which it received an improper instruction,"
 

 *590
 

 see
 

 id.
 
 at 193,
 
 432 S.E.2d at 846
 
 (citations omitted), especially where, as here, defendant cannot show that the error was prejudicial after considering the jury charge "contextually as a whole."
 
 See
 

 id.
 
 at 192,
 
 432 S.E.2d at 846
 
 (citation omitted).
 

 For the forgoing reasons, I concur in the result only.
 

 [1]
 

 A pseudonym.
 

 [2]
 

 Similar to the present case, this line of cases involves a disjunctive instruction where one of the theories presented to the jury is not supported by the evidence. This line of cases is distinct from another line of Supreme Court cases which addresses a situation where the jury is instructed on different theories but where each theory
 
 is
 
 supported by the evidence. This separate line of cases deals with the issue of jury unanimity.
 
 See
 

 State v. Walters
 
 ,
 
 368 N.C. 749
 
 , 753-54,
 
 782 S.E.2d 505
 
 , 507-08 (2016).
 

 [3]
 

 In
 
 Lawrence
 
 , our Supreme Court reaffirmed its holding in
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983), regarding the application of the plain error test, stating that the defendant must show that the error had a "probable impact" on the jury's verdict.
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 . Our Supreme Court, however, has relied on
 
 Odom
 
 in the past to conclude that a disjunctive jury instruction which included a theory not supported by the evidence had a "probable impact" on the jury's verdict.
 
 Tucker
 
 ,
 
 317 N.C. at 539
 
 ,
 
 346 S.E.2d at 421
 
 .
 

 [4]
 

 Our Court though, even after the
 
 Boyd
 
 decision in 2013, has continued to find reversible error
 
 per se
 
 . Some recent cases from our Court include
 
 State v. Dick
 
 , --- N.C.App. ----,
 
 791 S.E.2d 873
 
 , *11-12 (2016) (unpublished) (applying harmless error standard);
 
 State v. Jefferies
 
 , ---- N.C.App. ----, ----,
 
 776 S.E.2d 872
 
 , 880 (2015) ; and
 
 State v. Collington
 
 ,
 
 242 N.C. App. 252
 
 ,
 
 775 S.E.2d 926
 
 (2015) (unpublished) (stating that "trial court commits plain error [under Supreme Court precedent] when it instructs a jury on disjunctive theories of a crime, where one of the theories is improper").
 

 [5]
 

 Defendant also contends that the trial court committed plain error in its jury instructions for sex offense in a parental role, based on the trial court's instruction for both ''vaginal intercourse'' and ''sexual act,'' where the indictments only alleged that Defendant engaged in a ''sexual act'' with the victim. We acknowledge that this was error, however, it does not rise to the level of plain error. The cases cited by Defendant in support of this argument are distinguishable. Here, the verdict sheets only allowed the jury to find Defendant guilty if it believed he ''engag[ed] in a
 
 sexual act
 
 with a minor'', thus rendering any error in the trial court's earlier instructions harmless.
 
 See
 

 State v. Fincher
 
 ,
 
 309 N.C. 1
 
 , 22,
 
 305 S.E.2d 685
 
 , 698 (1983).
 

 [6]
 

 A "U-visa" is a type of visa available to victims of serious crimes who are undocumented immigrants and cooperate with law enforcement in the investigation or prosecution of crimes.
 
 8 U.S.C. § 1101
 
 (a) (15(U).
 

 [7]
 

 Defendant also submitted a petition for writ of
 
 certiorari
 
 to this Court for review of the trial court's order requiring him to register as a sex offender and enroll in satellite-based monitoring ("SBM"). We exercise our discretion pursuant to N.C. R. App. P. 21(a)(1) to consider Defendant's argument on this point. However, because we have left Defendant's convictions undisturbed, we affirm the trial court's order in this regard.
 

 [8]
 

 State v. Petersilie
 
 ,
 
 334 N.C. 169
 
 ,
 
 432 S.E.2d 832
 
 (1993) ;
 
 State v. Tucker
 
 ,
 
 317 N.C. 532
 
 ,
 
 346 S.E.2d 417
 
 (1986) ;
 
 State v. Brown
 
 ,
 
 312 N.C. 237
 
 ,
 
 321 S.E.2d 856
 
 (1984).
 

 [9]
 

 Further, it seems to me that if unanimity is satisfied from disjunctive instructions as to alternative acts-even one or more not supported by the evidence-from a constitutional perspective, a disjunctive instruction that is challenged simply because an alternative theory is not supported by the evidence cannot be prejudicial and therefore cannot constitute plain error.
 

 [10]
 

 The trial court's instruction quoted above in reference to two counts of sexual offense with a child was (for our purposes) identical to the instruction given for the four counts of "feloniously engaging in a sexual act with a minor over whom defendant had assumed a position of a parent residing in the home."
 

 [11]
 

 It is also worth noting that the nature of the erroneous instruction in
 
 Petersilie
 
 is fundamentally different from the nature of the error in the instant case. In
 
 Petersilie
 
 , the trial court, in misstating the law, essentially created an alternate theory under which the jury could find the defendant guilty, a theory not enumerated in or contemplated by the statute.
 
 See
 

 334 N.C. at 192-93
 
 ,
 
 432 S.E.2d at 845-46
 
 . In the instant case, the trial court did not erroneously instruct the jury by creating an element or listing an act which the jury could consider a sex offense which was not listed in the statute; analingus is specifically enumerated as a "sexual act."
 
 See
 

 N.C. Gen. Stat. § 14-27.1
 
 (4) (2013) (" 'Sexual act' means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse."),
 
 recodified as
 

 N.C. Gen. Stat. § 14-27.20
 
 (4) (2015),
 
 by
 
 N.C. Sess. Laws 2015-181, § 2, eff. Dec. 1, 2015.