IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-858

 Filed: 6 October 2020

Mecklenburg County No. 18 CVD 14611

CASSIA FERREIRA JORDAO, Plaintiff,

 v.

NIVALDO JORDAO, Defendant.

 Appeal by Plaintiff from Order for Temporary Parenting Arrangement entered

7 January 2019 and Order for Permanent Custody entered 5 April 2019 by Judge

Sean P. Smith in Mecklenburg County District Court. Heard in the Court of Appeals

3 March 2020.

 Plumides, Romano & Johnson, PC, by Richard B. Johnson, for plaintiff-
 appellant.

 Myers Law Firm, PLLC, by Matthew R. Myers, for defendant-appellee.

 MURPHY, Judge.

 We review custody orders to ensure the findings of fact are supported by

substantial evidence, and the conclusions of law are supported by the findings of fact.

Where unsupported findings of fact do not undermine the conclusions of law, we

uphold the order. Here, each of the custody order’s conclusions of law are supported

by findings of fact that are supported by substantial evidence; therefore, we uphold

the order.
 JORDAO V. JORDAO

 Opinion of the Court

 Where a trial court does not find a parent unfit, or visitation with that parent

to not be in the best interest of the children, it cannot deny reasonable visitation to

that parent. Here, Father was entitled to reasonable visitation, and the trial court

did not abuse its discretion in granting him reasonable visitation. The trial court

carefully considered the unique circumstances of the parties and did not abuse its

discretion by granting visitation in Brazil since Father is unable to exercise visitation

in the United States.

 BACKGROUND

 Cassia Ferreira Jordao (“Mother”) and Nivaldo Jordao (“Father”) married in

Brazil in 2001, and two children were born of the marriage—“Larry,”1 the oldest son,

and “Nicholas,” the youngest son (collectively “the children”). The family moved to

the United States on 27 January 2016 on a six-month tourist visa. After the

expiration of that visa on 27 July 2016, the family remained in the United States

without documentation.

 In January 2017, Mother filed for a Domestic Violence Protective Order

(“DVPO”) based on allegations Father assaulted, threatened, and stalked her. The

parties consented to the entry of a DVPO that prohibited Father from assaulting,

harassing, or threatening Mother and gave Mother primary custody of the children.

However, in June 2017, Father was arrested for violating the DVPO by allegedly

 1 Pseudonyms are used for all relevant persons throughout this opinion to protect the identities
of the minors and for ease of reading.

 -2-
 JORDAO V. JORDAO

 Opinion of the Court

stalking Mother at her church. Father claimed he had asked her to meet there to

pick up the youngest son. Based on these alleged acts of domestic violence, Mother

applied for a U-Visa on 13 December 2017.2 After his arrest, Father was deported to

Brazil due to his illegal presence in the country.

 Mother filed for divorce from Father on 24 July 2018. On 24 September 2018,

Father filed his answer to the complaint which included a motion to dismiss the

absolute divorce claim due to prior pending proceedings in Brazil and a motion for

child custody and a temporary parenting arrangement.3 On 12 December 2018, a

hearing for a Temporary Parenting Arrangement (“TPA”) was held, and, on 7 January

2019, the trial court entered its order setting out a TPA (“TPA Order”). The TPA

Order granted both parties joint legal custody of the children, with Mother having

temporary physical custody and Father having visitation in Brazil during the winter

and summer school breaks. The TPA Order also required Mother to provide weekly

emails to Father regarding the children and to allow communication between the

children and Father by email, text, and telephone.

 On 22 January 2019, Father filed a Motion for Contempt based upon Mother’s

failure to comply with the TPA Order provisions regarding weekly emails and

 2 “A ‘U-[V]isa’ is a type of visa available to victims of serious crimes who are undocumented
immigrants and cooperate with law enforcement in the investigation or prosecution of crimes.” State
v. Martinez, 253 N.C. App. 574, 584, 801 S.E.2d 356, 362 (2017) (citing 8 U.S.C. § 1101(a)(15)(U)).
 3 The DVPO had expired in February 2018, so there was no child custody order in effect in July

2018.

 -3-
 JORDAO V. JORDAO

 Opinion of the Court

communication with the children. Father also filed another Motion for Temporary

Parenting Arrangement. On 20 March 2019, Mother filed her reply to Father’s

motions and counterclaim for child custody, child support, and attorney fees.

 On 20 and 21 March 2019, the trial court heard the parties’ child custody

claims, and on 5 April 2019 the trial court entered an Order for Permanent Custody

awarding Mother primary legal and physical custody of the children and again

granting Father visitation with the children in Brazil.4 The order also set out detailed

provisions regarding communication, decision-making, travel between the United

States and Brazil, and the custodial schedule if Mother were to reside in Brazil.

Mother timely appealed.

 ANALYSIS

 A. Standard of Review

 “In a child custody case, the trial court's findings of fact are conclusive on

appeal if supported by substantial evidence, even if there is sufficient evidence to

support contrary findings.” Peters v. Pennington, 210 N.C. App. 1, 12–13, 707 S.E.2d

724, 733 (2011). “Substantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.” Id. at 13, 707 S.E.2d at 733.

“Unchallenged findings of fact are binding on appeal.” Id. (citing Koufman v.

 4 The order on appeal did not address Father’s contempt motion but expressly scheduled that
motion for hearing at a later date.

 -4-
 JORDAO V. JORDAO

 Opinion of the Court

Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). “Absent an abuse of

discretion, the trial court’s decision in matters of child custody should not be upset on

appeal.” Everette v. Collins, 176 N.C. App. 168, 171, 625 S.E.2d 796, 798 (2006).

 B. Challenged Findings of Fact

 Here, Mother challenges Findings of Fact 16, 21, 22, 26,5 28, 33, 34, 35, 36, 42,

43, and 44 as unsupported by evidence. Below we address each challenged finding of

fact to determine if it is supported by substantial evidence.

1. Finding of Fact 16

 Finding of Fact 16 states:

 16. The [c]ourt received testimony from an expert in
 immigration law named P. Mercer Cauley. While it is
 possible that Mother may receive a U-Visa, it is unlikely
 that a decision will be made sooner than Spring of 2023,
 and it is unlikely that such Visa will be granted based upon
 the number of application and limits that are currently in
 place. Although, it is possible that the limits may be
 increased and she may be successful. Nonetheless, it is
 unlikely that such a visa will be obtained by Mother that
 will allow her to stay beyond that point of decision by the
 federal courts.

(Emphasis added). The first part of Finding of Fact 16 is supported by the testimony

of P. Mercer Cauley (“Cauley”). Cauley testified it is possible Mother will receive a

U-Visa, but it would not be adjudicated for 6-7 years from the time of her application

because there are 10,000 granted each year and there is a significant backlog. He

 5 We note that although Mother and Father both cite to Finding of Fact 25, they refer to the
content of Finding of Fact 26, and so we analyze Finding of Fact 26 as opposed to Finding of Fact 25.

 -5-
 JORDAO V. JORDAO

 Opinion of the Court

also testified Mother did not have to be in the United States to be granted a U-Visa,

so if she were to leave the United States then she could later return to the United

States if she was granted a U-Visa and a waiver. A waiver would be required for

Mother to re-enter the country because she stayed past her former visa and would

otherwise be prohibited from returning for 10 years. When asked if he thought the

application would be granted, Cauley testified the application would probably get a

request for more evidence, and under the current administration “it’s probably not a

slam dunk.” The part of Finding of Fact 16 stating “it is unlikely that [a U-Visa] will

be granted” is not supported by any evidence, at least to the extent this finding is

interpreted as addressing the merits of Mother’s waiver request. The evidence did

not suggest Mother’s U-Visa is unlikely to be granted but the evidence did suggest a

delay of several years before this might happen. Although this portion of Finding of

Fact 16 is unsupported by evidence, it is not essential to any conclusion of law in this

case. See In re A.Y., 225 N.C. App. 29, 41, 737 S.E.2d 160, 167 (2013) (“We agree that

this finding of fact is only partially supported by competent evidence. . . . This error

is, however, harmless.”).

2. Findings of Fact 21 and 22

 Mother challenges Findings of Fact 21 and 22 together. Findings of Facts 21

and 22 state:

 21. The [c]ourt faces this decision on the backdrop of the
 parties’ immigration situation, which precludes Father

 -6-
 JORDAO V. JORDAO

 Opinion of the Court

 from entering the United States and also the Court finds
 that, based upon Mr. Cauley’s testimony, the children will
 have difficulty re-entering the United States should they
 depart and leave the United States.

 22. Additionally, should Mother leave the United States,
 she is likely to have difficulty to return to the United
 States.

 Mother claims these findings of fact improperly suggest there was a possibility

of Mother and the children to return, when, in reality, if they left it would be

impossible for them to return. In terms of Finding of Fact 21, Cauley stated the

children would not be barred from returning for 10 years because as minors “they do

not accrue the same unlawful presence,” but “they would have to apply for a visa,”

which would be very unlikely to be granted because they had overstayed one visa

already. Additionally, the children would receive U-Visas if Mother was granted one

in 2023, so it would be possible for them to return at that time. Although this

evidence suggests it is unlikely the children could re-enter the United States, it is not

impossible and characterizing this as “the children will have difficulty re-entering the

United States” is supported by substantial evidence.

 In terms of Finding of Fact 22, Cauley testified that absent a waiver Mother

would not be able to return to the United States for 10 years once she left. The trial

court heard testimony that the grant of a waiver would allow her to return sooner,

and she would likely discover the status of her waiver in 2023 along with her U-Visa

application. Again, this evidence suggests it is unlikely that Mother could re-enter

 -7-
 JORDAO V. JORDAO

 Opinion of the Court

the United States, but it is not impossible and characterizing this evidence as Mother

being “likely to have difficulty to return to the United States” is supported by

substantial evidence.

3. Finding of Fact 26

 Finding of Fact 26 states:

 26. The [c]ourt does not find that Father committed
 domestic violence upon either child.

 Father testified he “[n]ever [has been violent toward his children]. They are

there in the courthouse. They can testify if I’ve ever been violent towards them.”

Although there was conflicting evidence presented by Mother suggesting Father was

violent toward Larry, there was sufficient evidence for the trial court to find Father

did not commit domestic violence against either child. Larry specifically corroborated

there had been no domestic violence against the children in a letter read into

evidence, although he also later testified this letter was generally dishonest and

Father asked him to write it. Despite the conflicting evidence, the trial court found

Father had not committed domestic violence against the children, and substantial

evidence supported this finding in Father’s testimony and Larry’s testimony.

4. Finding of Fact 28

 Finding of Fact 28 states:

 28. The Court was presented with a document which
 describes the travel advisory for Brazil. However, the
 specific places which are noted do not include the area
 around Blumenau.

 -8-
 JORDAO V. JORDAO

 Opinion of the Court

 Although Mother takes issue with this finding of fact on the basis of the

implication there is no travel advisory to Brazil, when in reality there is a level two

travel advisory for all of Brazil, the express content of the finding of fact is supported

by the evidence. Mother presented a document describing the travel advisory in

Brazil, and testimony about this document showed there was a level two travel

advisory throughout Brazil. However, there was no indication the area around

Blumenau where Father lives was noted as having a higher travel advisory level. As

a result, there was substantial evidence to support the trial court having been

“presented with a document” describing “the travel advisory in Brazil,” and “the

specific places which are noted [did] not include the area around Blumenau.”

5. Findings of Fact 33, 34, 35, and 36

 Mother challenges Findings of Fact 33, 34, 35, and 36 together. These findings

of fact state:

 33. Mother ignored [Larry]’s poor performance in school
 that resulted in him dropping out of school and entering an
 E-learning environment.

 34. She condoned [Larry]’s disregard of the law and did not
 require him to work despite stating that the reason for his
 withdrawal was to allow him to work.

 35. Mother provided intentionally incorrect and fraudulent
 reasons to Charlotte-Mecklenburg Schools for [Larry’s]
 dropout. Mother allowed and encouraged [Larry] to drop
 out of school and into an E-learning environment due to his
 association with others who encouraged him to engage in

 -9-
 JORDAO V. JORDAO

 Opinion of the Court

 drug use along with them. The Court finds such decision
 was not in [Larry’s] best interest.

 36. She currently does not adequately monitor [Larry’s]
 online progress and her work schedule precludes her from
 monitoring whether or not [Larry] is in fact adequately
 paying attention to his E-learning studies.

 Finding of Fact 33 is supported by Mother’s testimony characterizing Larry as

an “excellent” student at Providence in 9th and 10th grade. However, in his 10th grade

year Larry had only two classes with grades in the 80s or 90s, those being Math 2

with an 84 and Fitness with a 92. He also had a 71 in American History, a 56 in

Biology, a 51 in English 2, a 76 in Spanish 1, a 73 in Sports and Entertainment

Marketing, and a 74 in Fitness 2. Based on the disparity between Mother’s

characterization of Larry as an “excellent” student and his actual grades, there was

substantial evidence to conclude Mother was ignoring his poor performance.

Additionally, there is substantial evidence to support the finding that Larry’s poor

performance was part of what resulted in him dropping out of school and starting E-

learning. The stated reason for him dropping out was he “need[ed] a better schedule

to work and study at the same time,” but very quickly Larry stopped working because

“he wanted to go back to studying.” The trial court could conclude from this evidence

that Larry did not drop out to work, as he worked for only a very short time period

after dropping out, and instead he dropped out due to his grades and school

environment.

 - 10 -
 JORDAO V. JORDAO

 Opinion of the Court

 Finding of Fact 34 is also supported by substantial evidence. As mentioned

above, Larry dropped out of high school because he “need[ed] a better schedule to

work and study at the same time,” but very quickly Larry stopped working because

“he wanted to go back to studying.” Mother testified Larry does not work because he

has online classes that require him to be online for a long time. Thus, substantial

evidence showed Mother did not require him to continue working despite his

withdrawal being for the purpose of working. In terms of Mother condoning Larry’s

disregard for the law, substantial evidence showed Mother knew of Larry smoking

marijuana, drinking alcohol, and skipping school, and did not or could not stop him

from doing so.

 Finding of Fact 35 is supported by substantial evidence. Mother testified it

“was not such a bad thing” Larry was not going to school because he would meet with

his friends at school to smoke marijuana. As stated above, Larry left high school to

work, but then did not work because he needed to study. After seemingly

acknowledging Larry could have gone back to his high school after quitting his job,

Mother testified “the environment at [his high school] was not good for him. He had

all his friends his age all using marijuana there . . . .” This evidence supports the

trial court’s finding that Mother allowed and encouraged Larry to drop out of school.

Furthermore, it suggests Mother intentionally provided incorrect information and

 - 11 -
 JORDAO V. JORDAO

 Opinion of the Court

Larry could have gone back to high school, but she did not require him to return nor

did she update the school.

 Finding of Fact 36 is partially supported by the evidence. Mother did not know

all of the online classes Larry was taking, how many classes he was taking, or his

grades in those classes. This constitutes substantial evidence supporting the finding

that Mother was not keeping track of or monitoring Larry’s online classes. Mother

stated she worked from Monday through Friday, 8 A.M. to 12 P.M. If Larry should

be in online schooling during this time period, Mother is unable to supervise and

ensure he is adequately paying attention to his work. However, there is no evidence

of Larry’s school hours, and as a result there is no evidence establishing Mother’s

work schedule precludes her from supervising Larry’s work. Although Finding of

Fact 36 is partially unsupported by evidence, it is not essential to any conclusion of

law in this case. See A.Y., 225 N.C. App. at 41, 737 S.E.2d at 167 (“We agree that this

finding of fact is only partially supported by competent evidence. . . . This error is,

however, harmless.”).

6. Findings of Fact 42, 43, and 44

 Mother challenges Findings of Fact 42, 43, and 44 together. Findings of Fact

42, 43, and 44 state:

 42. Mother should have primary physical custody and
 Father should have secondary physical custody of the
 minor children as outlined herein. This is in the children’s
 best interest.

 - 12 -
 JORDAO V. JORDAO

 Opinion of the Court

 43. This Court cannot find that Father is an unfit caregiver
 or that in person contact is not the best interest of the
 children. Father desperately wants to see, speak to, and
 play a part in the lives of his children. Despite logistical
 and legal challenges, [F]ather has pursued this action in a
 quest to not be indefinitely cut off from his children.

 44. The Court is therefore required not to deny physical
 visitation by Father with the children.

 Findings of Fact 42 and 44 are actually more properly characterized as

conclusions of law. “Generally, any determination requiring the exercise of judgment

or the application of legal principles is more properly classified a conclusion of law.

Any determination made by logical reasoning from the evidentiary facts, however, is

more properly classified a finding of fact.” In re Foreclosure of Gilbert, 211 N.C. App.

483, 487, 711 S.E.2d 165, 169 (2011) (internal quotations and citations omitted).

Findings of Fact 42 and 44 both require the exercise of judgment and the application

of the law controlling custody determinations and visitation. However, Finding of

Fact 43 is actually a finding of fact that requires substantial evidence to support it.

Findings of Fact 42 and 44 are conclusions of law that require supporting findings of

fact. Finding of Fact 43 underlies Findings of Fact 42 and 44, so we first look to

Finding of Fact 43.

 Finding of Fact 43 is supported by the following evidence: testimony by Luigi

Luz suggested Father was a good parent who could be trusted with his children; Larry

lived with Father following his parents’ separation for several months; Father’s

 - 13 -
 JORDAO V. JORDAO

 Opinion of the Court

consistent visitation with the younger son; Father wanted a good relationship with

his older daughters from another marriage and that motivated his move to the United

States; in Brazil, Father sent Larry to a private school to get a higher quality

education, and later in the United States they specifically sought out good schools;

Father testified to having a very good relationship with the children when they came

to the United States initially; Father denied ever being violent toward his children;

after he was deported, Father made arrangements to see his children and attempted

to purchase flights to Brazil for the children as outlined in the TPA Order; Father

testified he had a great relationship with his children, prior to his deportation, and

he was trying to be there for them; Father testified “[i]t’s everything I want in my life

to be near my . . . children[,]” and expressed great concern over his older son’s new

drug use in the months following Father’s deportation; and Father’s home in Brazil

has a room for each child were they to visit. Thus, despite conflicting evidence, the

trial court had substantial evidence to support its finding that it could not find

 Father is an unfit caregiver or that in person contact [was]
 not the best interest of the children. Father desperately
 wants to see, speak to, and play a part in the lives of his
 children. Despite logistical and legal challenges, [F]ather
 has pursued this action in a quest to not be indefinitely cut
 off from his children.

 Finding of Fact 44, which is actually a conclusion of law, is supported by

Finding of Fact 43 and applies N.C.G.S. § 50-13.5(i), which requires “the trial judge,

prior to denying a parent the right of reasonable visitation, [to] make a written

 - 14 -
 JORDAO V. JORDAO

 Opinion of the Court

finding of fact that the parent being denied visitation rights is an unfit person to visit

the child or that such visitation rights are not in the best interest of the child.”

N.C.G.S. § 50-13.5(i) (2019). Since the trial court did not find Father to be an unfit

caregiver or visitation to not be in the best interest of the children, the trial court

could not deny Father reasonable visitation. Finding of Fact 42, also a conclusion of

law supported by Finding of Fact 43 and N.C.G.S. § 50-13.5(i), correctly found the

only reasonable visitation possible was for the children to visit Father in Brazil.

 C. Visitation with Father in Brazil

 Mother argues the trial court abused its discretion in awarding Father

visitation in Brazil. In issues of child custody, a trial court must make its decision

based on the best interest of the children. N.C.G.S. § 50-13.2(a) (2019). To deny a

parent custody or visitation, a trial court must find the parent “is an unfit person to

visit the child or that such visitation rights are not in the best interest of the child.”

N.C.G.S. § 50-13.5(i) (2019).

 Mother challenges Findings of Fact 42, 43, and 44 as unsupported by

substantial evidence, as well as Conclusion of Law 5 as unsupported by the findings

of fact. As stated above, Finding of Fact 43 is supported by substantial evidence.

Additionally, Findings of Fact 42 and 44 are conclusions of law supported by findings

of fact. As a result, we look only to whether Conclusion of Law 5 is supported by the

findings of fact.

 - 15 -
 JORDAO V. JORDAO

 Opinion of the Court

 Conclusion of Law 5 is supported by Findings of Fact 42, 43, and 44.

Conclusion of Law 5 states:

 5. Father shall have secondary custody of the minor
 children as set forth herein and these provisions are in the
 best interest[] of the minor children and best promote their
 health, education and safety pursuant to the provisions of
 N.C.G.S. § 50-13.2 and other relevant statutory provisions.

There was adequate evidence to support the findings of fact, and the findings of fact

support the challenged conclusion of law. As outlined above, the trial court found it

could not hold Father was “an unfit caregiver or that in person contact [was] not in

the best interest of the children,” so it could not deny Father reasonable visitation.

See N.C.G.S. § 50-13.5(i) (2019). Therefore, Father was entitled to the only

reasonable visitation possible in light of his inability to return to the United States—

the children visiting him in Brazil.6 The trial court did not abuse its discretion in

granting Father secondary physical custody in the form of visitation in Brazil.

 D. N.C.G.S. § 50-13.2(a)-(b)

 Mother contends the trial court abused its discretion by failing to address the

following relevant factors of N.C.G.S. § 50-13.2:

 (a) . . . In making the determination[ of who to award child
 custody], the court shall consider all relevant factors
 including acts of domestic violence between the parties, the
 safety of the child, and the safety of either party from

 6 Under N.C.G.S. § 50-13.2, the trial court was not authorized to order solely electronic
visitation. “Electronic communication with a minor child may be used to supplement visitation with
the child. Electronic communication may not be used as a replacement or substitution for custody or
visitation.” N.C.G.S. § 50-13.2(e) (2019).

 - 16 -
 JORDAO V. JORDAO

 Opinion of the Court

 domestic violence by the other party. An order for custody
 must include written findings of fact that reflect the
 consideration of each of these factors and that support the
 determination of what is in the best interest of the child. .
 ..
 (b) . . . If the court finds that domestic violence has
 occurred, the court shall enter such orders that best protect
 the children and party who were the victims of domestic
 violence, in accordance with the provisions of [N.C.]G.S. [§]
 50B-3(a1)(1), (2), and (3). If a party is absent or relocates
 with or without the children because of an act of domestic
 violence, the absence or relocation shall not be a factor that
 weighs against the party in determining custody or
 visitation. Absent an order of the court to the contrary,
 each parent shall have equal access to the records of the
 minor child involving the health, education, and welfare of
 the child.

N.C.G.S. § 50-13.2(a)-(b) (2019) (emphasis added). This statute requires the trial

court to “consider all relevant factors including acts of domestic violence between the

parties, the safety of the child, and the safety of either party from domestic violence

by the other party.” Id. The trial court must “include written findings of fact that

reflect the consideration of each of these factors and that support the determination

of what is in the best interest of the child.” Id.

 In this case, the trial court considered all relevant factors. It considered

domestic violence and the past relationship between Mother and Father in Findings

of Fact 9 and 10, which found Father accused Mother of dating other men while

married, and Father committed domestic violence against Mother. It considered

domestic violence in terms of the children in Finding of Fact 26, which found Father

did not commit domestic violence against the children. The trial court addressed the

 - 17 -
 JORDAO V. JORDAO

 Opinion of the Court

safety and well-being of the children, including the effect of visitation in Brazil, in

Findings of Fact 14, 21, 26, 27, 28, 30, 31, 32, 33, 34, 35, 36, 37, 39, 41, 42, 43, and

44, which considered, inter alia, the children’s lack of health insurance in the United

States, their immigration situation, their progress in school, the safety of the home

in Brazil, their behavior outside of school, and their compliance with the law in the

United States. Although there are no specific findings referring to Mother’s safety

should she go to Brazil, it is apparent the trial court “considered” the safety of Mother.

Findings of Fact 9, 10, 18, 19, 20, 24, 38, 40, and 41 all address the interactions

between the parties and the attitude of Father toward Mother. These findings

discuss, inter alia, the history of domestic violence, Father’s anger toward Mother

and how he has expressed that anger with criticism, vulgarity, and intimidation of

Mother, Father’s perception of Mother’s behavior, and how the parties have

communicated poorly with each other. In light of the trial court’s findings considering

the history between the parties, the attitudes of the parties, and the interactions

between the parties in light of the domestic violence that occurred, the trial court did

not err in failing to make a more specific finding of fact. Although there were not any

specific findings of fact or conclusions of law referring to this factor, the trial court

considered the factor as required by the statute. N.C.G.S. § 50-13.2(a) (2019) (“the

court shall consider all relevant factors including acts of domestic violence between

 - 18 -
 JORDAO V. JORDAO

 Opinion of the Court

the parties, the safety of the child, and the safety of either party from domestic

violence by the other party”).

 Mother also claims N.C.G.S. § 50-13.2(b) was violated because “the trial court’s

order is directly contrary to the fourth sentence of” N.C.G.S. § 50-13.2(b), which

requires that “[i]f a party is absent or relocates with or without the children because

of an act of domestic violence, the absence or relocation shall not be a factor that

weighs against the party in determining custody or visitation.” N.C.G.S. § 50-13.2(b)

(2019). This language does not apply to this situation, or to the extent it could apply,

it would apply to Father, not Mother. Father is the only party who has “relocated” to

Brazil, at least indirectly due to his own commission of domestic violence. Mother

has not relocated or been “absent” due to domestic violence. The plain language of

N.C.G.S. § 50-13.2(b) is referring to “the party” who is “absent” or has relocated “with

or without the children because of an act of domestic violence.” Thus, the trial court

was required not to weigh Father’s absence or relocation against him in determining

custody or visitation. Considering the entire order, the trial court carefully

considered the difficult dilemma created by the parties’ immigration status to

determine the best interest of the children. Although Mother hopes to avoid a future

relocation with the children to Brazil because of her fear of future domestic violence,

that is not the situation addressed by this statute. The trial court did not err in

failing to address this statutory language.

 - 19 -
 JORDAO V. JORDAO

 Opinion of the Court

 CONCLUSION

 The findings of fact challenged by Mother that are unsupported by substantial

evidence are not essential to any conclusion of law, and all conclusions of law are

supported by the unchallenged or supported findings of fact. The trial court did not

abuse its discretion in granting Father visitation in Brazil where the trial court did

not find Father to be unfit or visitation to not be in the best interest of the children

and visitation in Brazil was the only reasonable visitation available to Father. The

trial court complied with N.C.G.S. § 50-13.2(a) as the custody order fully considered

the safety of Mother.

 AFFIRMED.

 Judges BRYANT and STROUD concur.

 - 20 -